OPINION
Defendant-appellant, Robert D. Mueller, appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division, increasing his child support obligation and adopting a shared parenting plan concerning his children.
Robert and Susan Mueller were married in 1982. They had three children, Christopher Douglas Mueller, born May 17, 1988, Thomas Allen Mueller, born February 2, 1990, and Evan Scott Mueller, born November 2, 1994. The marriage was terminated on August 14, 1994. Susan received sole custody of the children and Robert was granted visitation. Robert was ordered to pay child support in the amount of $349.61 per month per child, and agreed to pay an additional $200 bi-weekly for day care expenses.
In February 1998, Susan began experiencing problems with the children. Christopher and Thomas' teachers also noticed problems. Both children were referred to counseling by their teachers. Robert and Susan agreed that Robert's new wife, Unae, would become the children's day care provider while Susan was at work. Susan paid Unae $250 bi-weekly for her services as day care provider. Unae worked closely with Christopher and Thomas, and their behavior and school performance improved dramatically. Susan also began working more closely with the boys at this time as well.
On July 20, 1998, Susan filed a motion to modify child support, contending that Robert's payments were insufficient. In August 1998, Susan terminated Unae as day care provider. Her reasons for doing so are disputed by the parties, although Susan expressed concern that the boys needed more interaction with their peers and that Unae was overstepping her bounds as day care provider. On October 1, 1998, Robert filed a motion to amend the separation agreement and adopt a shared parenting plan.
On October 14, 1998, a magistrate's hearing was held on Susan's motion to modify child support. The magistrate ruled in her favor, increasing Robert's child support obligation to $442 per month per child. Both parties filed objections to the magistrate's decision. Susan objected to the magistrate imputing income to her as underemployed. Robert objected to the magistrate including past overtime in the child support calculation and failing to deduct certain expenses and the $200 bi-weekly day care expenses in its calculations.
On April 7, 1999, the trial court held a hearing on the objections. It also considered the shared parenting plan and who would provide day care for the children. Both parties testified, as well as Unae, neighbors, and the children's teachers. On May 10, 1999, the trial court filed its decision, finding that Susan was not voluntarily underemployed and that income could not be imputed to her, and that Robert's past overtime should not have been considered because he was no longer entitled to overtime. The trial court considered the federal child care tax deduction in the support calculations, but refused to consider certain expenses claimed by Robert. The shared parenting plan was approved, and Robert's child support obligation was increased to $520.59 per month per child. The trial court refused to deviate from the basic child support schedule and applicable worksheet.
On June 11, 1999, Robert filed a motion to reconsider the trial court's decision, which the trial court apparently construed as a Civ.R. 60(B) motion.[1] On June 16, 1999, the trial court held a hearing on the motion, which it denied by entry filed on July 6, 1999. Robert appeals, raising three assignments of error.
Assignment of Error No. 1:
 IT WAS AN ERROR OF LAW, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ABUSE OF DISCRETION WHEN THE TRIAL COURT CALCULATED CHILD SUPPORT.
In his first assignment of error, Robert contends that the trial court incorrectly calculated his child support obligation. He asserts that the trial court should have found that Susan was underemployed and imputed income to her. He also argues that the trial court erred by failing to consider certain expenses and taxes as reasons to deviate from the basic child support schedule.
The trial court possesses considerable discretion in child support matters. The decision of the trial court will be reversed only if it is the product of an abuse of discretion. Pauly v.Pauly (1997), 80 Ohio St.3d 386, 390. "Abuse of discretion" connotes that the trial court's judgment was unreasonable, arbitrary, or unconscionable. An abuse of discretion will be found where the trial court's decision is without a reasonable basis or is not supported by competent, credible evidence.Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, 401.
"Income" is defined by R.C. 3113.215(A)(1) to include:
 (a) For a parent who is employed to full capacity, the gross income of the parent;
 (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent.
"Gross income" is defined in R.C. 3113.215(A)(2) to include:
 [E]xcept as excluded in this division, the total of all earned and unearned income from all sources during the calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses[.] (Emphasis added.)
"Potential income" for a parent determined to be voluntarily unemployed or underemployed is defined in R.C.3113.215(A)(5)(a) to include:
 Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications and the prevailing job opportunities and salary levels in the community in which the parent resides.
Whether a parent is underemployed is a question of fact for the trial court. Rock v. Cabral (1997), 67 Ohio St.3d 108, syllabus. It is left to the trial court to determine what amount of income, if any, must be imputed to an unemployed or underemployed parent pursuant to R.C. 3113.215(A)(5)(a). Id. As with other child support matters, this determination will not be disturbed absent an abuse of the trial court's discretion. Carman v. Carman (1996), 109 Ohio App.3d 698, 702.
At the time the parties' marriage was dissolved, Susan was a full-time volunteer coordinator at Mercy Hospice, earning approximately $29,000 annually. When Mercy Hospice was sold to Hospice of Cincinnati, Susan's job was eliminated, and she was given the opportunity to work as a receptionist at the same pay rate for six months, before her wage rate would be reduced from $14.27 per hour to $10 per hour. Susan stayed with Mercy Hospice until she was able to take a position with Mercy Fairfield as a volunteer coordinator, earning $11.32 per hour or $23,545 annually.
The trial court found that she was not voluntarily underemployed because she did not choose to leave a higher paying job for a lower paying one. Her position at Mercy Hospice was eliminated, and her hourly wage rate was cut substantially. She then found a higher paying job at Mercy Fairfield. Under these circumstances, Robert's argument that Susan is "voluntarily underemployed" is specious at best. The trial court did not err in finding that Susan was not voluntarily underemployed and in not imputing income to her.
We now turn to Robert's challenge to the calculated child support obligation. R.C. 3113.215 is a comprehensive enactment governing the procedures for awarding and calculating child support. Its provisions are mandatory in nature and must be followed literally and technically in all material respects. This is because the overriding concern of R.C. 3113.215 is the best interest of the child for whom support is being awarded. Markerv. Grimm (1992), 65 Ohio St.3d 139, 141-142. Even where a trial court adopts a shared parenting order, the calculation of support must be made in accordance with the basic child support schedule set forth in R.C. 3113.215(D) and the applicable model worksheet in R.C. 3113.215(E) or (F). R.C. 3113.215(B)(6). If the court makes the proper calculations based upon the schedule and applicable worksheet, the amount shown on the worksheet is "rebuttably presumed" to be the correct amount of child support due. R.C. 3113.215(B)(1); Rock, 67 Ohio St.3d at 110.
Under R.C. 3113.215(B)(6)(a), a trial court shall not deviate from the schedule and applicable worksheet
 except that, if the application of the schedule and the worksheet * * * would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in [R.C. 3113.215(B)(3)], the court may deviate from the amount of child support that would be ordered in accordance with the schedule and worksheet, * * * shall consider those extraordinary circumstances and other factors if it deviates from that amount, and shall enter in the journal the amount of child support calculated pursuant to the basic child support schedule and * * * applicable worksheet * * *, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination.
"Extraordinary circumstances of the parents" includes, pursuant to R.C. 3113.215(B)(6)(b):
 (i) The amount of time that the children spend with each parent;
 (ii) The ability of each parent to maintain adequate housing for the children;
 (iii) Each parent's expenses, including but not limited to, child care expenses, school tuition, medical expenses, and dental expenses.
R.C. 3113.215(B)(3) provides:
 In determining whether that amount [calculated according to the schedule and applicable worksheet] would be unjust or inappropriate and would not be in the best interest of the child, the court may consider any of the following factors and criteria:
(a) Special and unusual needs of the children;
 (b) Extraordinary obligations for minor children or obligations for handicapped children who are not step-children and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;
(c) Other court-ordered payments;
 (d) Extended times of visitation or extraordinary costs associated with visitation, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet * * * or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of companionship or visitation granted by court order;
 (e) The obligor obtains additional employment after a child support order is issued in order to support a second family;
 (f) The financial resources and the earning ability of the child;
(g) Disparity in income between parties or households;
 (h) Benefits that either parent receives from remarriage or sharing living expenses with another person;
 (i) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;
 (j) Significant in-kind contributions from a parent, including, but not limited to, direct payments for lessons, sports equipment, schooling, and clothing;
 (k) The relative financial resources, other assets and resources, and needs of each parent;
 (l) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;
 (m) The physical and emotional condition and needs of the child;
 (n) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;
 (o) The responsibility of each parent for the support of others;
(p) Any other relevant factor.
Any deviation from the schedule and applicable worksheet must be made in full and strict compliance with the requirements of R.C. 3113.215(B), and the deviation must be supported by the evidence and stated in the trial court's findings of fact.Marker, 65 Ohio St.3d at syllabus.
Although the trial court did not clearly explain why it refused to deviate from the schedule and applicable worksheet either at the objections hearing or in its decision from that hearing, the trial court offered a better explanation at the hearing to reconsider its decision. During the second hearing, the trial court first indicated that it was precluded from considering any factors or circumstances not included in the applicable worksheet. It later stated, however, that it had reviewed the factors listed in R.C. 3113.215(B)(3) and that none of these factors were applicable to the instant case.
In its decision, the trial court noted that Robert was entitled to partial reimbursement from Susan for certain medical and other expenses should he properly submit bills for these expenses. Robert had yet to submit any of these bills to Susan. Nor were bills for these expenses provided to the trial court. Thus, Robert could not include them as relevant "extraordinary circumstances" under R.C. 3113.215(B)(6)(b).
The trial court stated at the second hearing that, even if there were any factors present which could weigh in favor of deviating from the applicable calculation, it would not deviate from the schedule and applicable worksheet in light of the income disparity between the parties. The trial court specifically ruled that a deviation would not be in the best interests of the children, because it would deprive them of the standard of living they would otherwise enjoy if Robert and Susan had not divorced. Even with the child support obligation, Robert's gross household income after the exchange of the child support obligation was calculated at almost $25,000 more than Susan's gross household income.
The trial court did not abuse its discretion by refusing to impute income to Susan or deviating from the schedule and applicable worksheet. Robert's first assignment of error is overruled.
Assignment of Error No. 2:
 IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ABUSE OF DISCRETION WHEN THE TRIAL COURT ORDERED DEFENDANT/APPELLANT TO CONTINUE TO PAY DIRECTLY TO PLAINTIFF/APPELLEE $200.00 BI-WEEKLY FOR DAY CARE EXPENSE IN ADDITION TO THE COURT'S CHILD SUPPORT ORDER.
In his second assignment of error, Robert contends that the trial court erred by continuing that part of the original separation agreement in which he agreed to pay $200 bi-weekly to Susan for day care expenses. Robert argues that this amount should have been deducted from his child support obligation, rather than earmarked as a separate, agreed-upon payment.
As noted above, the trial court retains considerable discretion in deciding child support and care issues. Pauly,80 Ohio St.3d at 390. The trial court did not abuse its discretion in ordering Robert to continue to pay Susan the agreed upon amount for child care expenses. In its decision, the trial court made clear that although the separation agreement reads that Robert was to pay $200 per week, the parties' practice altered the agreement to a bi-weekly payment of $200. The trial court saw no reason to terminate this agreed-upon arrangement between the parties since it would detrimentally affect the children's best interest.
The evidence before the trial court supports this conclusion. The parties agreed to this arrangement, and no action had been taken to terminate this part of the agreement. In its decision, the trial court held that Susan would be responsible for any child care expenses incurred above the $200 bi-weekly payments should she not use Unae as the care provider. The trial court believed that it would not be in the best interests of the children to alter this mutual agreement. We agree. Robert's second assignment of error is overruled.
Assignment of Error No. 3:
 IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ABUSE OF DISCRETION WHEN THE TRIAL COURT DENIED DEFENDANT/APPELLANT'S REQUEST TO PROVIDE DAY CARE FOR THE PARTIES' MINOR CHILDREN.
In his final assignment of error, Robert contends that the trial court should have ordered that Susan utilize Unae as the children's day care provider. Robert argues that there was evidence supporting his contention that Unae was responsible for the children's improved behavior and grades.
The trial court's resolution of this matter is reviewed for an abuse of discretion. Pauly, 80 Ohio St.3d at 390. So long as the record contains competent, credible evidence in support of the trial court's decision, this court should not substitute its judgment for that of the trial court. Unger v. Unger (Apr. 12, 1999), Brown App. No. CA98-02-003, unreported, at 16.
The record demonstrates that the trial court weighed the evidence and made its decision based upon the best interest of the children. The trial court agreed with Robert that Unae played a significant role in helping the children, and that she should continue to have substantial interaction with the children. But the trial court also believed that it was important for the children to have significant interaction with their peer groups and to take part in activities outside of their home during the afternoons. The trial court reasoned that these social activities and interactions would greatly aid the children in developing their social skills. The trial court stated that should problems develop, it would not hesitate to reconsider this issue.
There was evidence supporting the trial court's decision, and the rationale underlying that decision is reasonable. The trial court did not abuse its discretion. Robert's third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.
[1] As we have stated in the past, "motions for reconsideration" of a trial court's decision are a nullity with the enactment of the Civil Rules of Procedure, and are thus a "legal fiction" which may be ignored by the courts. ScottsdaleIns. Co. v. Brock (Feb. 14, 2000), Butler App. No. CA99-01-009 and CA99-02-023, unreported, at 10.