OPINION
Defendant-appellant/cross-appellee, Glen Mavity ("Glen"), appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division, terminating his marriage to plaintiff-appellee/cross-appellant, Nancy Mavity ("Nancy"). The trial court divided the parties' assets and liabilities, and awarded spousal support and attorney fees to Nancy. Nancy also appeals, assigning several cross-assignments of error. We affirm the decision of the trial court.
Glen and Nancy were married in March 1967. For most of the marriage, Glen worked as an engineer for General Electric. Nancy, who had been an airline stewardess prior to the marriage, stayed at home and cared for the couple's two children, who are now emancipated. In 1994, Glen left General Electric, accepting an early retirement package. However, he continued to work as an engineer, first at Superior Label, and then at Belcan Engineering, where he was employed at the time of the divorce hearing. Glen's salary at the time of the divorce hearing was $88,000 per year. Nancy has worked as a real estate agent for approximately the last four years, and the trial court found that she was capable of earning $25,000 to $30,000 per year. Glen was sixty-one years old at the time of the divorce hearing, while Nancy was fifty-four years old.
Glen left the marital home in July 1999, and filed for divorce in November 1999. Nancy filed for divorce in January 2000. A divorce hearing was held in May 2000. By decision filed November 9, 2000, the trial court dissolved the marriage. The trial court ordered Glen to pay $1,750 per month in spousal support. The trial court found that all of the parties' debt was marital debt, except $3,200 Nancy owed for a cosmetic surgery. The marital debt was allocated equally between the parties. The trial court also ordered Glen to pay $2,500 toward Nancy's attorney fees, which totaled $3,300. The trial court further ordered that Nancy pay Glen $2,000 for furniture she sold while the divorce was pending, to be offset against any amount owed to her by Glen as temporary spousal support arrearage.
Glen now appeals the trial court's decision, raising three assignments of error. Nancy also appeals, raising three cross-assignments of error.
Glen's Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ITS AWARD OF SPOUSAL SUPPORT TO PLAINTIFF-APPELLEE [SIC]
In his first assignment of error, Glen argues that the trial court abused its discretion by not considering all the factors in R.C. 3105.18
when determining whether to award spousal support. Specifically, Glen argues that the trial court did not consider the income of the parties derived from property divided in the divorce proceeding. According to the divorce decree, Nancy was to receive half of the proceeds from the sale of the marital residence, as well as half of the marital portion of Glen's General Electric pension. Therefore, Glen contends, a spousal support award of $1,750 per month is excessive. Glen also argues that, though the trial court stated it considered the parties' lifestyle, no evidence of that lifestyle existed in the record. Therefore, he argues, the trial court abused its discretion by not actually considering a mandatory statutory factor.
R.C. 3105.18(C)(1) sets forth fourteen factors that the trial court must consider when determining whether to award spousal support. R.C.3105.18 provides:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support * * * the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
A trial court has broad discretion to determine the proper amount of spousal support based on the facts and circumstances of each case. Kunklev. Kunkle (1990), 51 Ohio St.3d 64, 67. A trial court's award of spousal support will not be disturbed absent an abuse of discretion. Id. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
When a trial court indicates that it has reviewed the appropriate statutory factors, there is a strong presumption that the factors were indeed considered. Babka v. Babka (1992), 83 Ohio App.3d 428, 435.
We find no abuse of discretion by the trial court. The trial court did not explicitly make findings as to each factor set forth in R.C.3105.18(C)(1). However, in its decision, the trial court stated that it had reviewed R.C. 3105.18 in making its determination for spousal support. Accordingly, there is a strong presumption that the factors were indeed considered. Babka, at 435.
In addition to stating that it had reviewed R.C. 3105.18 in making its determination, the trial court noted specific factors that were particularly relevant to the case. The trial court mentioned the age of the parties, the length of the marriage, the disparity in the parties' earnings, the parties' income earning capacity, the disparity in the parties' education, and the lifestyle established during the marriage as particularly relevant factors.
The trial court made various findings of fact to support its decision. The trial court found that the parties had been married for thirty-three years. At the time of the divorce hearing, Nancy was fifty-four years old while Glen was sixty-one years old. Glen currently earned $88,000 per year, while Nancy had the capacity to earn $25,000 to $30,000. Glen is a college graduate and holds an M.B.A., while Nancy graduated from high school and took a few college courses. Though the trial court did not make any specific findings as to the parties' lifestyle, the record shows that they lived in a home valued at well over $300,000, which included many expensive items of furniture.
After making the above findings and reviewing R.C. 3105.18, the trial court found it reasonable for Glen to pay $1,750 per month in spousal support. The record does reflect, as Glen notes, that Nancy would receive half of the real estate proceeds when the marital home was sold, and half of the marital portion of Glen's G.E. pension, which Glen claims is approximately $1,200 per month. However, based on the trial court's detailed decision, the strong presumption that the trial court considered each statutory factor, and our review of the record, we do not find that the trial court's decision regarding spousal support was unreasonable, unconscionable, or arbitrary. Glen's first assignment of error is overruled.
Glen's Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ITS DISTRIBUTION OF MARITAL ASSETS BY CONSIDERING A FORMER JOINT CHECKING ACCOUNT WHICH DID NOT EXIST [SIC]
Under his second assignment of error, Glen argues that the trial court erred by considering a nonexistent asset when distributing the marital property.
The trial court awarded Nancy the Infiniti automobile, valued at $13,200. The trial court awarded Glen the 1976 Oldsmobile, valued at $500, and the Cadillac, for which $1,000 of marital money was used to purchase. The trial court then stated that its decision regarding the automobiles would "be considered an offset to the difference in cash retained by Mr. Mavity in what had been a former joint checking account."
Glen argues that "there is no evidence to support the existence of such a checking account" and thus the trial court erred in considering this nonexistent asset in the property distribution. He also argues that there is no indication as to the amount of the offset since there is no finding with respect to the value of the account. Thus, according to Glen, we must remand this case for the trial court to determine "what effect, if any," the offset had on the property distribution.
The trial court has broad discretion to fashion a division of marital property. Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609. Absent an abuse of discretion, a reviewing court must not reverse the decision of the trial court regarding property division. Middendorf v. Middendorf
(1998), 82 Ohio St.3d 397, 401. The trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable.Blakemore, 5 Ohio St.3d at 219.
Contrary to Glen's assertion, it is possible to determine the amount of the offset. The magistrate intended to offset the difference in the marital values of the Infiniti awarded to Nancy, and the Oldsmobile and Cadillac awarded to Glen, with the amount Glen retained in a former joint checking account. The trial court determined that the value of the Infiniti was $13,200. The trial court also determined that the value of the Oldsmobile was $500, and that Glen used $1,000 of marital money to acquire the Cadillac. Thus, the amount of the offset is $11,700, and it is not necessary to remand the case for a determination of this amount.
The trial court also acted within its discretion by considering cash retained by Glen in a former checking account. Though the record does not show that there was a "former joint checking account," both Nancy and Glen testified that Glen had two personal checking accounts, one at Provident Bank and another at Hebron Deposit Bank. No other checking accounts are mentioned in the record and we find it clear that the trial court intended to offset funds Glen retained in these accounts.
Glen does not argue that the offset was inequitable, but that the trial court erred in considering a nonexistent asset. Glen testified that he withdrew $2,000 from the Provident account when he left the marital home, and that the account contained a $2,400 balance at the time of the divorce hearing. The record does not include any documentation of Glen's account at Hebron Deposit Bank and Nancy testified that she never saw the check register for that account. We find it clear that the trial court intended to offset cash retained by Glen in his two checking accounts. Thus, the trial court did not consider a nonexistent asset.
Based on the above evidence in the record and the trial court's broad discretion to fashion a property division, we find that the trial court did not abuse its discretion by considering cash Glen retained in his personal checking accounts as an asset to be distributed. Glen's second assignment of error is overruled.
Glen's Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN AWARDING ATTORNEY'S FEES TO PLAINTIFF-APPELLEE IN THE ABSENCE OF PROOF OF THE STATUTORY CRITERIA SUPPORTING AN AWARD OF SUCH FEES.
Under this assignment of error, Glen argues that the trial court did not make the required finding under R.C. 3105.18(H) of Nancy's inability to fully litigate her rights and adequately protect her interests, before awarding her attorney fees.
It is within the sound discretion of the trial court to award attorney fees in a divorce action. Rand v. Rand (1985), 18 Ohio St.3d 356, 359;Carman v. Carman (1996), 109 Ohio App.3d 698, 705. A decision by the trial court regarding attorney fees will not be reversed absent an abuse of discretion. Dunbar v. Dunbar (1994), 68 Ohio St.3d 369, 371; Laynev. Layne (1992), 83 Ohio App.3d 559, 568.
R.C. 3105.18(H) provides:
 In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees.
 Thus, R.C. 3105.18(H) requires the trial court to determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests without an attorney fee award.
Glen concedes that he has the ability to pay the attorney fees awarded to Nancy. However, he argues that the trial court did not specifically determine that Nancy would be prevented from fully litigating her rights and adequately protecting her interests without an attorney fee award.
The magistrate's opinion, which was adopted by the trial court, states the following with regard to attorney fees:
 As and for a lump sum payment in spousal support, I recommend that Mr. Mavity pay Mrs. Mavity $2,500.00 towards her attorney fees submitted by affidavit at the rate of $3,300.00. This case involved lengthy preparation, review of asset information and preparation for trial which included extensive exhibits. I find the attorney fee to be fair and reasonable and it should be paid as a form of spousal support.
We do not find an abuse of discretion by the trial court. The trial court did not explicitly make a finding regarding whether Nancy would be able to fully litigate her rights without an attorney fee award. However, a trial court's failure to recite the exact language of R.C.3105.18(H) is not reversible error if the record supports the trial court's determination. Curtis v. Curtis (2000), 140 Ohio App.3d 812,815; Mays v. Mays (Oct. 12, 2001), Montgomery App. No. 2000-CA-54, unreported.
Evidence in the record of Nancy's income, her debt, and the lengthy preparation necessary for the case, supports the conclusion that Nancy would be prevented from fully litigating her rights absent a reasonable attorney fee award. The trial court found that Nancy was capable of earning $25,000 to $30,000 per year as a real estate agent. Notwithstanding this finding, the parties stipulated that Joseph Lynn, Director of Marketing for Star One Realty where Nancy was employed, would testify that Nancy should average $25,000 per year in earnings, not including $5,000 to $7,000 in business expenses. As the magistrate noted, this case involved extensive reviewing of assets and the preparation of numerous, lengthy exhibits. Additionally, the trial court ordered that Nancy be responsible for $20,990 of marital debt.
Thus, though the trial court did not recite the exact words of the statute, the record supports the trial court's decision to award Nancy $2,500 of her $3,300 in attorney fees. Based on Nancy's low income earning capacity, her debt obligations, and the extensive preparation necessary for the case, the trial court's decision awarding Nancy attorney fees was not arbitrary, unreasonable, or unconscionable. Glen's third assignment of error is overruled.
Nancy's Cross-Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF/APPELLEE/CROSS-APPELLANT IN THE DIVISION OF MARITAL DEBT.
Under her first cross-assignment of error, Nancy raises two issues for our review. First, she argues that the trial court abused its discretion by dividing the credit card debt equally when a portion of this debt is Glen's nonmarital debt for which he will be reimbursed. Second, she argues that the trial court abused its discretion by dividing the credit card debt equally when Glen's income was much greater and he was most responsible for the marital debt. We will address these two issues for review together.
A trial court has broad discretion to fashion an equitable property division. Bisker, 69 Ohio St.3d at 609. Although debt is not explicitly mentioned, courts interpreting R.C. 3105.17(C)(1) have found that the starting point for allocating marital property is an equal division of marital assets and debts. See, e.g., Easterling v. Easterling (Apr. 13, 2001), Montgomery App. No. 18523, unreported; Braylock v. Braylock (Dec. 23, 1999), Cuyahoga App. No. 75459, unreported. A trial court's decision regarding property division will not be reversed absent an abuse of discretion. Middendorf, 82 Ohio St.3d at 401.
Both Glen and Nancy incurred substantial credit card debt during the marriage. At the time of the divorce hearing, Nancy's credit card debt totaled $25,935.00, while Glen's totaled $12,645.28. The trial court determined that the date of the divorce hearing would mark the end of the marriage for property division purposes. The trial court then divided the marital debt equally among the parties, except for $3,200 that Nancy owed for a cosmetic surgery.
We do not find an abuse of discretion by the trial court in dividing the marital debt equally between the parties. Nancy asserts that Glen should bear more of the burden because his salary is much higher than her own. However, given that the trial court awarded Nancy $1,750 per month in spousal support, awarded her a significant portion of her attorney fees, and set off money she owed Glen for furniture sold during the marriage against temporary spousal support arrearage, the record shows that the trial court had sufficiently taken into account the effect of the parties' income disparity. Thus, the trial court's decision was not arbitrary, unreasonable, or unconscionable.
Nancy also argues that the debt allocation is inequitable because Glen will be reimbursed by his employer for numerous credit card expenses. Glen testified that he mainly used his credit cards for gas, food, clothes, and entertainment. He also testified that he charged some business expenses on credit cards for which he would be reimbursed. We find that the trial court's decision to equally divide the marital debt is supported by evidence in the record and is not an abuse of discretion. Nancy's first cross-assignment of error is overruled.
Nancy's Cross-Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLEE WHEN IT ORDERED THE APPELLEE TO PAY THE APPELLANT $2000 FOR ITEMS SOLD DURING THE PENDENCY OF THE DIVORCE.
Under this cross-assignment of error, Nancy presents two issues for our review. First, she argues that the trial court erred by ordering her to pay $2,000 to Glen for furniture she sold during the pendency of the divorce. Nancy claims that she was effectively forced to sell certain items of personal property in order to support herself because Glen did not fulfill his statutory obligation to support her. Second, she argues that the trial court abused its discretion by accepting replacement values for the furniture sold while the divorce was pending. We will address these two issues for review together.
While the divorce was pending, Nancy sold the following items of personal property: an armoire, two dining room chairs, a nightstand, and a French writing desk. Nancy testified that she sold the armoire for $350, the dining room chairs together with the nightstand for $300, and the French writing desk for $150. Thus, Nancy's total for the items sold is $800. Nancy testified that the parties paid $2,000 for the armoire, which was now severely scratched, and $460 for the French writing desk. Her appraiser's report shows that the dining room chairs were worth $75 each. She testified that she sold these items in order to pay living expenses after Glen left the home, and that she sold them for market value.
Glen claimed that the armoire was worth $2,800, based on the fact that the parties purchased it on discount for $2,000. He testified that the nightstand was worth $1,300, and that the French writing desk and companion chair were worth $1,600, based on similar items of furniture he saw in stores. Finally, Glen's appraiser's report shows that the two dining room chairs were worth $200 each. Thus, Glen's total for the items sold is $6,100.
We do not find the trial court's decision to be an abuse of discretion. The trial court ordered Nancy to pay Glen $2,000 for his half of the marital value of these items sold while the divorce was pending. Thus, by implication, the trial court valued these items at $4,000. The trial court did not completely accept Glen's values for the items, some of which were "replacement values." Rather, the trial court adopted a value for these items based on appraisers' valuations and the testimony of both parties to the divorce. We cannot say that the trial court, which had an opportunity to hear the witnesses, abused its discretion in this decision.
Nancy did testify that she was forced to sell these items because Glen refused to fulfill his statutory duty to support her. However, the trial court specifically set off this $2,000 against any arrearage in temporary spousal support that Glen owed Nancy, which the trial court found to be $1,500.
Thus, based on our review of the record, we do not find the trial court's decision regarding Nancy's $2,000 payment to be arbitrary, unreasonable, or unconscionable. Nancy's second cross-assignment of error is overruled.
Nancy's Cross-Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLEE BY ONLY ORDERING THE APPELLANT TO PAY ONLY [SIC] $2500.00 TOWARDS HER ATTORNEY FEES.
Under her third cross-assignment of error, Nancy argues that the trial court erred by not ordering Glen to pay a larger portion of her attorney fees, which Nancy claims are in excess of $3,300. However, the record shows that Nancy failed to raise this issue in her objections to the magistrate's decision. Therefore, she has waived this issue for review on appeal. See Civ.R. 53(E)(3)(b); Schneider v. Schneider (Jan. 22, 2001), Butler App. No. CA2000-05-089, unreported, at 8-9. Accordingly, Nancy's third cross-assignment of error is overruled.
Judgment affirmed.
VALEN and POWELL, JJ., concur.