This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Plaintiff-Appellant Amy M. Boreman has appealed from a divorce decree granted by the Wayne County Court of Common Pleas. This Court reverses and remands.
 I
On October 12, 1985, Amy M. Boreman ("Wife") and Randy W. Boreman ("Husband") were married in Congress, Ohio.[1] On December 29, 1999, Wife filed for divorce. She later amended the complaint to include Husband's brother, Rick Boreman ("Rick"), Rick's wife, Cheryl Boreman ("Cheryl"), and Boreman Farms as additional and necessary parties.
Boreman Farms, which includes a dairy farm located at 7623 Cedar Valley Road in West Salem, Ohio, is a partnership between Husband and Rick. From 1980 to 1991, Boreman Farms farmed the 7623 Cedar Valley Road property that Husband's parents had been renting for thirty years. On March 6, 1991, Husband, Wife, Rick and Cheryl bought the 162 acre property from Mary and Ruth George for $146,000. All four names are on the deed and on the loans relating to the property.
On June 7, 2001, the trial court approved and adopted the magistrate's report and proposed decision and granted Wife a divorce.[2] As part of that decision, the trial court found, based on Husband's and Rick's testimony that they received a "good deal" because of their parents' relationship with the Georges, that 49 percent of the 7623 Cedar Valley Road property is non-marital. The trial court found that only $200,940 out of the $394,000 present value of the property is marital property subject to division between the four owners. After several calculations, the trial court determined that Wife is only entitled to $38,369 as marital equity on the property. Wife has appealed that portion of the trial court's decision, asserting one assignment of error.
 II Assignment of Error
The trial court's decision finding no direct marital equity or interest in the real property located at 7623 Cedar Valley Road, West Salem, Ohio is contrary to law, against the manifest weight of the evidence, and constitutes an abuse of the discretion of the trial court.
In her sole assignment of error, Wife has asserted that the trial court erred in finding that a portion of the 7623 Cedar Valley Road property is non-marital. Wife has argued that a "good deal" on the purchase of property made during the marriage by Husband, Wife, Rick and Cheryl does not constitute separate property. This Court agrees.
Under R.C. 3105.171(B), a trial court must classify property as marital or separate, i.e., non-marital, before such property can be awarded. The characterization of the property as either marital or separate is a factual inquiry. An appellate court must affirm the trial court's factual conclusions unless they are not supported by competent, credible evidence. Spinetti v. Spinetti (Mar. 14, 2001), 9th Dist. No. 20113, at 7.
When determining whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at 14. To determine whether a criminal conviction is against the manifest weight of the evidence, the court:
 "[R]eview[s] the entire record, weigh[s] the evidence and all reasonable inferences, consider[s] the credibility of witnesses and determine[s] whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed[.]" State v. Otten (1986), 33 Ohio App.3d 339, 340.
Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice. Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse. Id.
Once the trial court has characterized the property as marital or separate, it is within its discretion to fashion an equitable division of property. A trial court has broad discretion in making divisions of property in domestic cases. Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 401. Accordingly, an appellate court will not reverse a distribution absent an abuse of discretion. Martin v. Martin (1985),18 Ohio St.3d 292, 294-295. An abuse of discretion is more than merely an error of judgment; it connotes a decision that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Pursuant to R.C. 3105.171(A)(3)(a), marital property includes:
 "(i) All real and personal property that currently is owned by either or both of the spouses * * * that was acquired by either or both of the spouses during the marriage; [and]
 "(ii) All interest that either or both of the spouses currently has in any real or personal property * * * that was acquired by either or both of the spouses during the marriage[.]"
The 7623 Cedar Valley Road property was acquired by Husband and Wife, along with Rick and Cheryl, during the marriage; therefore, it is presumed to be marital property and Husband bore the burden of establishing that it is actually separate property. Separate property includes all real and personal property that is found by the court to be any of the following:
 "(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
"* * *
 "(vii) Any gift of any real or personal property or an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(i-vii).
Since the record establishes that Husband, Wife, Rick and Cheryl bought the property after Husband and Wife were married, the issue becomes whether there was a "good deal" discount, and if so, whether the "good deal" constitutes Husband's separate property. The trial court determined that the parties received a "good deal" and that the "good deal" discount was $137,500.[3]
The record contains no clear indications of why the Georges sold their property below market value. Husband testified that the Georges knew they were selling it below the market price, but no direct evidence of the Georges' intent was presented. Husband speculated that his parents' relationship with the Georges and the overall familial relationship between farmers led to the "good deal." Assuming, without deciding, that Husband, Wife, Rick and Cheryl did receive a "good deal" because of the Georges' relationship with Husband's parents, to become separate property it must also be found that the "good deal" falls into one of the enumerated categories in R.C. 3105.171(A)(6)(a).
Appellant has argued that a "good deal" does not constitute separate property. This Court agrees that a "good deal" is not contained in R.C.3105.171(A)(6)(a), but we must review the trial court's factual determination that the "good deal" is a gift. We review that finding under the competent, credible evidence standard.[4] As the party seeking to have the property deemed separate, Husband bore the burden of establishing the "good deal" as a gift by clear and convincing evidence.Spinetti, at 8; see, also, West v. West, 9th Dist. No. 01CA0045, 2002-Ohio-1118, at fn. 3. "Clear and convincing evidence" means that degree of proof that will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Barkleyv. Barkley (1997), 119 Ohio App.3d 155, 168-169.
This Court finds that the trial court erred in determining that the "good deal" constituted a gift to Husband. The record is void of clear and convincing evidence that the Georges intended to give only Husband a "good deal" on the purchase of the property. To the contrary, the evidence shows that the Georges sold the property to Husband, Wife, Rick and Cheryl without any mention of a discounted price to benefit only Husband. Husband's and Rick's speculation as to the Georges intent to give them a "good deal" as a gift does not rise to the level of clear and convincing evidence.
This Court concludes that the record lacks competent, credible evidence to establish that the Cedar Valley Road property is separate property. Accordingly, the trial court's determination that a portion of the property is non-marital is against the manifest weight of the evidence. Since the trial court erred in characterizing the 7623 Cedar Valley Road property as non-marital, no issue remains as to whether the trial court abused its discretion in distributing the property. Based on the foregoing, Appellant's sole assignment of error is sustained.
 III
Appellant's sole assignment of error is sustained. The judgment of the trial court regarding the characterization of the 7623 Cedar Valley Road property is reversed and remanded for proceedings consistent with this opinion.
BAIRD, P.J., BATCHELDER, J. CONCUR.
[1] Two children were born of the marriage: Victor, born on September 29, 1987, and Ashley, born on April 1, 1991.
[2] This Court notes that the magistrate's report and proposed decision of April 20, 2001, and the magistrate's judgment decree of divorce of April 20, 2001, contain different provisions regarding the treatment of the 7623 Cedar Valley Road property. The magistrate's report states that 49 percent of the property is non-marital and the decree of divorce states that the whole farm is non-marital. The trial court's judgement entry states that it adhered to the magistrate's report; therefore, the trial court found that 49 percent of the property is non-marital.
[3] To determine the discount the trial court calculated the difference between the price paid for the property, $146,000, and the estimated fair market value of the property in 1991, $283,500.
[4] The record contains testimony concerning Husband's parents paying $40,000 as the down-payment for the 7623 Cedar Valley Road property. The trial court did not include that amount in its calculation of the marital equity of the property. Accordingly, this Court need not decide the issue on appeal.