OPINION *Page 2 
{¶ 1} Plaintiff-appellant Beryl Howard Wheeler appeals from the November 15, 2006 Judgment Entry Decree of Divorce issued by the Licking County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Beryl Howard Wheeler and appellee Frances Joann Wheeler were married on August 24, 1950. Two children were born as issue of such marriage, to wit: Raymond Daniel Wheeler, who is deceased, and Beryl David Wheeler, who is emancipated.
 {¶ 3} On June 13, 2005, appellant filed a complaint against appellee in the Licking County Court of Common Pleas, Domestic Relations Division. Appellee filed an answer and counterclaim on June 27, 2005.
 {¶ 4} Thereafter, a final divorce hearing was held on June 12, 2006. The following testimony was adduced at trial.
 {¶ 5} At the hearing, appellee testified that she was seventy three (73) years old and that she graduated from high school in 1950. She further testified that she obtained a permanent civil protection order against appellant in May of 2005 after appellant committed acts of domestic violence against her.
 {¶ 6} Appellee testified that the parties owned a marital residence that was purchased using monies that they earned during the marriage and also using insurance money they received after their son died. According to an appraisal done in December of 2005, the property had an appraised value of $137,000.00. The property, however, was encumbered by a home equity line of credit that, as of April 30, 2006, had a *Page 3 
balance of $46,904.24. Appellee testified that the money from the line of credit was used to remodel the basement and to pay marital debt.
 {¶ 7} Appellee further testified that she receives social security benefits of $658.00 a month and retirement benefits from Owens Corning in the amount of $384.00 a month for a total monthly income of $1,042.00. Appellee testified that she pays $523.00 a month for the mortgage and spends approximately $300.00 a month on food and $350.00 amount on utilities.
 {¶ 8} Appellee also testified that she was hospitalized in April of 2005 for a heart attack and that she has had a total of six heart attacks and three minor strokes. Appellee further testified that she has other health problems and has had her gallbladder removed, has Crohn's disease and has lung problems. When asked, appellee testified that she was covered under appellant's health insurance plan with Aetna, but that she would lose coverage once the parties were divorced. Appellant testified that she then would have to pay between $35.00 and $37.00 a month for Medicare Part D prescription program and that there was a $3,600.00 yearly deductible for the same. Appellee also testified that Medicare Part B would cost her $88.50 a month and that the yearly deductible for Medicare Part A, which she already had, was $952.00.
 {¶ 9} Evidence was adduced at the hearing that appellant was seventy three (73) years old and that he receives social security benefits in the amount of $614.00 a month and Ohio Public Employee Retirement Benefits of $2,048.00 a month, for a total monthly income of $2,662.00. Appellant's monthly expenses are approximately *Page 4 
$2,244.00. This figure does not include the $809.00 a month that appellant pays on the parties' credit card debt.
 {¶ 10} Appellant has medical insurance for himself through Aetna for which he pays nothing. Appellant testified that, because he was removed from the marital home as a result of the civil protection order, he resides in a one bedroom apartment that he furnished with a borrowed couch and chair. Appellant testified that the two purchased the marital home in 1985 and that, in August of 2002, he got a mortgage for $50,000.00 from Fiberglas Federal Credit Union against the house, in part, to pay credit cards. Appellant testified that part of such money was also used to have the marital home painted, re-carpeted and to have repairs done.
 {¶ 11} At the hearing, appellant testified that his mother died in January of 2001 and that, in May of 2002, he sold a condo that he inherited from her and netted approximately $74,000.00 from the sale. Appellant testified that such money went into a savings account in his name at Fiberglas Credit Union along with $10,782.00 in cash that he inherited from his mother. Appellant also inherited four series E savings bonds of $1,097.69. When asked how much of the money from the savings account was left as of the time of the hearing, appellant testified that he had only $11,000.00 remaining in the account. While appellant had approximately $20,000.00 in the account as of August of 2005, he testified that he paid $4,000.00 for appellee's attorney and also paid his own attorney and that he used the money for living expenses.
 {¶ 12} Appellant also testified that, out of the money that he inherited, he spent around $6,000.00 for a new sidewalk and driveway for the marital home, repaired the *Page 5 
chimney and bought new shingles. The following is an excerpt from appellant's testimony:
 {¶ 13} "Q. All right. The stuff inside the house. Now did you buy appliances for the house out of your mother's money?
 {¶ 14} "A. Yes, ma'am, I did.
 {¶ 15} "Q. And what did you buy out of your mother's money?
 {¶ 16} "A. I bought a Kitchen-Aid double-door refrigerator for a thousand five hundred and ninety-nine dollars. I bought a dishwasher for five hundred and ninety-nine dollars. I bought a stove for a thousand two hundred and ninety-nine dollars. I bought a microwave for three hundred and ninety-nine dollars. I bought a computer for a thousand four hundred and five dollars. And a T-V for twenty-five hundred. That was a 52-inch T-V, ma'am." Transcript at 77.
 {¶ 17} When asked, appellant testified that he did not have records for any of the above purchases because the records were in a filing cabinet in the marital house and that, even though he asked for such information, appellee did not provide it to him. Appellee denied that she withheld such information and claimed that it was not in the marital home.
 {¶ 18} Appellee testified as on cross that appellant used his inheritance to put a new driveway in, to have trees taken down in the yard, and to purchase a stove, computer, microwave and dishwasher for the marital home. She also testified that appellant had purchased a big screen TV and a refrigerator, but testified that she was unsure where the money came from to purchase the same. *Page 6 
 {¶ 19} Pursuant to a Judgment Entry Decree of Divorce filed on November 15, 2006, the trial court awarded each party one half of the $90,096.00 equity in the marital home and awarded the marital home to appellee. The trial court, in its entry, further stated in paragraph 2 as follows:
 {¶ 20} "The Court finds that the total value of the parties' retirement benefits is $552,640.00. The Court orders that the parties' share of the retirement accounts shall be equalized. Each party should receive the value of $276,320.00. The defendant is awarded $122,847.00 as equalization.
 {¶ 21} "The Plaintiff, however, shall be credited his interest in his one half of the real property equity of $45,048.00, his assumption of her one half share of the $46,904.00 mortgage debt, and his assumption of $15,458.00, the defendant's share of the credit card debt, as a credit against her share of the retirement. This amounts to an $83,958.00 credit against the equalization amount.
 {¶ 22} "The Defendant shall be awarded a judgment for the remainder of her retirement share of $38,889.00. The Plaintiff shall, by December 2006, begin to extinguish this amount by 120 equal monthly installments to the defendant."
 {¶ 23} The trial court, in its entry, further awarded each party all personal property and household good in his or her possession, with specified exceptions. With respect to the issue of debt, the trial court stated as follows:
 {¶ 24} "The Court orders that the parties shall split the credit card indebtedness of $30,916.00, and the Fiberglass Credit Union home equity loan of $46,904.00. The Court, however, orders that these debts be paid according to the dictates of paragraph two above. *Page 7 
 {¶ 25} "The Plaintiff shall be solely responsible for his Fiberglass Federal Credit Union vehicle loan of $11,511.00."
 {¶ 26} The trial court did not award appellee any spousal support.
 {¶ 27} Appellant now raises the following assignments of error on appeal:
 {¶ 28} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO DIVIDE THE PARTIES' ASSETS AND DEBTS EQUALLY OR EQUITABLY.
 {¶ 29} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY AWARDING THE PARTIES' REAL ESTATE TO THE APPELLEE, INSTEAD OF ORDERING THAT IT BE SOLD.
 {¶ 30} "III. THE TRIAL COURT ERRED BY FAILING TO AWARD THE APPELLANT HIS SEPARATE PROPERTY.
 {¶ 31} "IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING THE APPELLEE AN AWARD OF ATTORNEY FEES."
 I {¶ 32} Appellant, in his first assignment of error, argues that the trial court erred and abused its discretion by failing to divide the parties' assets and debts equally or equitably. We agree, in part.
 {¶ 33} A review of a trial court's division of marital property is governed by the abuse of discretion standard. Martin v. Martin (1985),18 Ohio St.3d 292, 480 N.E.2d 1112. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. See Middendorf v.Middendorf, 82 Ohio St .3d 397, 1998-Ohio-403, 696 N.E.2d 575. In order *Page 8 
to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 34} R.C. 3105.171 provides for the division of marital property and separate property, and states in pertinent part:
 {¶ 35} "(B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest.
 {¶ 36} "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section. . . ."
 {¶ 37} The trial court, in its November 15, 2006 Judgment Entry awarding the marital home to appellee, noted that the marital home had an appraised value of $137,000.00 and was encumbered by a home equity loan in the amount of $46,904.00. The trial court then awarded each party one half of the $90,096.00 ($137,000.00-$46,904.00) equity and directed the parties to "See paragraph Two." *Page 9 
 {¶ 38} The trial court, in paragraph two of its entry, noted that the total value of all of the parties' retirement benefits was $552,640.00 and then ordered that each party was to receive an equal share of the same, or $227,320.00. Because appellee's retirement benefits only totaled $153,473.00 (Social Security in the amount of $104,031.00 plus $49,442.00 in retirement benefits from Owens Corning), the trial court awarded appellee $122,847.00 as a equalization payment.
 {¶ 39} The trial court then ordered as follows:
 {¶ 40} "The Plaintiff, however, shall be credited his interest in his one half of the real property equity of $45,048.00, his assumption of her one half share of the $46,904.00 mortgage debt, and his assumption of $15,458.00, the defendant's share of the credit card debt, as a credit against her share of the retirement. This amounts to an $83,958.00 credit against the equalization amount.
 {¶ 41} "The Defendant shall be awarded a judgment for the remainder of her retirement share of $38,889.00 [$122,847.00 — $83,958.00]. The Plaintiff shall, by December 2006, begin to extinguish this amount by 120 equal monthly installments to the defendant."
 {¶ 42} The trial court also awarded appellee a judgment in the amount of $38,889.00 "for the remainder of her retirement share."
 {¶ 43} We concur with appellant that the trial court calculated the credit given for the equity in the house incorrectly. The trial court, in its November 15, 2006 Judgment Entry, determined that the equity in the marital home was $90,096.00 ($137,000 less the $46,904.00 home equity loan) and then awarded appellant a credit for half of this, or $45,048.00. However, since the marital home was awarded to appellee free and clear of *Page 10 
any debt, the equity in the marital home was actually $137,000.00, the fair market value. Appellant, therefore, is entitled to credit for one half of the same, or $68,500.00, rather than the $45,048.00 figure used by the trial court.
 {¶ 44} As is stated above, the trial court awarded appellee $122,847.00 as a equalization. Once we deduct the $68,500.00 representing appellant's one half share of the equity in the real estate, the $23,452.00 representing appellant's assumption of appellee's share of the $46,904.00 mortgage debt, and $15,458.00 representing appellant's assumption of appellee's share of the credit card debt, we arrive at a figure of $107,410.00. This amount should have been credited against the $122,847.00 equalization payment amount. Thus, the amount of the equalization payment should have been reduced to $15,437.00 ($122,847.00 — $107,410.00) rather than $38,889.00. ($122,847.00 — $83,958.00).
 {¶ 45} The following chart illustrates how the $15,437.00 equalization payment fits into the property/debt division.

 Fair Market Value Debt
House $137,000.00 ($46,904.00)
Credit Card ($30,916.00)
Wife's Social Security $104,031.00
Husband's Social Security $92,115.00
Husband's OPERS $307,052.00
Wife's Owens Corning $49,442.00
Pension
TOTAL $689,640.00 ($77,820.00)
 *Page 11 
$689,640.00 — ($77,820.00)
Total equity = $611,820.00 / 2 = $305,910
 Husband's Wife's
 ($46,904.00) $137,000.00
 ($30,916.00) $104,031.00
 $92,115.00 $49,442.00
 $307,052.00 ___________________
 $321,347.00 subtotal $290,473.00 subtotal
- $15,437.00 equalization payment + $15,437.00
 $305,910.00 $305,910.00

 {¶ 46} Based on the foregoing, we concur with appellant that the trial court incorrectly calculated the equity in the marital real property.
 {¶ 47} Appellant, in his first assignment of error, also argues that the trial court erred in failing to take into consideration all of the parties' marital assets and debts when it determined the amount of credit that appellant was entitled to receive to against the equalization payment.
 {¶ 48} The first asset that appellant alleges that the trial court failed to take into account is a whole life insurance policy. Appellant notes that the trial court awarded such policy to appellee in its Judgment Entry.
 {¶ 49} Appellee testified at trial that she had $2,000.00 worth of life insurance and that the beneficiary for the same was Heather, the parties' granddaughter. Plaintiff's Exhibit 14, which was admitted into evidence at trial without objection, shows that a limited payment life policy with the face amount of $2,000.00 was issued to appellee by The Western and Southern Life Insurance Company. There is, however, no evidence in the record that such policy has a cash surrender value. We find, therefore, that the trial *Page 12 
court did not err in taking the same into account in determining the amount of credit that appellant was entitled to receive.
 {¶ 50} Appellant next contends that the trial court erred in failing to credit appellant for paying appellee's share of the debt on a Dodge Caravan. The trial court, in its Judgment Entry, awarded each party the vehicle in his/her possession and ordered each party to pay any debt regarding the vehicle received. While appellant was awarded a 2002 Dodge Caravan, appellee was awarded a 1985 Chevrolet. Appellant notes that the Chevrolet did not have any loan associated with it whereas the Caravan, as evidenced by appellee's trial Exhibit B, had a loan balance of $11,511.75 as of April 30, 2006.
 {¶ 51} Appellant now contends that an exhibit was admitted into evidence, without objection, showing that the fair market value of the Caravan was $9,830.00 and that, therefore, the debt on the same ($11,511.75 — $9,830.00 = $1,681.75) exceeded its fair market value. On such basis, appellant argues that he should have been credited for paying appellee's share of this negative equity.
 {¶ 52} However, Plaintiff's Exhibit 11, which is the exhibit that appellant refers to, is a Kelly blue book page showing that a 2002 Dodge Caravan with 33,000 miles has a value ranging between $8,985.00 and $10,515.00. There was no evidence adduced at the hearing as to the condition and mileage of the Dodge Caravan in this case. We find, therefore, that the trial court did not err in failing to credit appellant with paying what appellant refers to as appellee's share of this debt. There may not, in fact, be such a negative equity. *Page 13 
 {¶ 53} Appellant next argues that the trial court, in determining the amount of credit that appellant was entitled to receive to equalize the property division, failed to consider that appellee took money from the parties' joint bank account, without his consent, after the parties had separated while the divorce was proceeding. Appellant argues that appellee should be ordered to pay the $3,614.00 that she withdrew from the account and that he should be credited with such amount.
 {¶ 54} At the hearing in this matter, appellee admitted taking such money, but testified that she took the same to pay bills. The following is an excerpt from appellee's testimony:
 {¶ 55} "Q. . . . did you take that money or what did you do with that money?
 {¶ 56} "A. Paid bills.
 {¶ 57} "Q. What bills? Tell me what happened? Tell the Court what happened?
 {¶ 58} "A. All the utilities and the credit cards and everything, his insurance and everything, was paid with that three thousand dollars.
 {¶ 59} "Q. All right. And who did you give that money to to pay that?
 {¶ 60} "A. Heather.
 {¶ 61} "Q. All right. And was ___ was that while you were in the hospital?
 {¶ 62} "A. I was in the nursing home.
 {¶ 63} "Q. How long were you in the hospital, Mrs. Wheeler?
 {¶ 64} "A. I was in the hospital three weeks and the nursing home seven." Transcript at 154-155. *Page 14 
 {¶ 65} Based on the foregoing, we find that the trial court did not err in failing to take into consideration the $3,614.00. There is no evidence in this case that appellee, in taking such money, engaged in financial misconduct.
 {¶ 66} Appellant, in the final subsection of his first assignment of error, argues that the trial court erred in failing to take into consideration the value of the parties' personal property when it determined the amount of credit that appellant was entitled to receive. Appellant notes that the trial court awarded appellee nearly all of the parties personal property and that the only items awarded to him were a 52" television, a chest of drawers, a VCR, and two Masonic fez hats. All of these items were the only items listed in "Personal Property Items Requested by Plaintiff/Husband Currently in Defendant/Wife's Possession" (Plaintiffs Exhibit 13), but were not assigned any values by appellant or by the trial court in its Judgment Entry. Appellee, in Defendant's Exhibit C, opined that the value of such items was $350.00.[1]
 {¶ 67} At the hearing in this matter, neither party submitted an appraisal with respect to the value of the personal property. Appellee submitted a handwritten list to the trial court (Defendant's Exhibit C) indicating that, in her opinion, the value of all of the parties personal property was approximately $2,000.00 She also testified to such affect at the hearing.
 {¶ 68} In turn, appellant testified at the hearing that he did not agree with appellee's values and that he believed that the insurance value of the property would be closer to what the value of the property was. Appellant also submitted Plaintiff's Exhibit 12, without objection, which is a statement from State Farm Insurance dated June 6, *Page 15 
2006 showing that the parties' personal property was insured for $100,950.00. The trial court, in its entry, found that the value of the remaining marital property was $1,775.00.
 {¶ 69} Because there were no appraisals submitted to the trial court, the trial court was free to accept appellee's testimony as to the value of the parties' personal property. The trial court, as trier of fact, clearly found appellee's testimony on such issue to be credible.
 {¶ 70} Appellant's first assignment of error is, therefore, sustained in part and overruled in part.
 II {¶ 71} Appellant, in his second assignment of error, argues that trial court erred and abused its discretion in awarding the marital home to appellee and not ordering that it be sold. We disagree.
 {¶ 72} While a trial court can order a martial home to be sold, the trial court is granted broad discretion to further an equitable division of property. See Martin v. Martin (Jan. 22, 1998), Cuyahoga App. No. 71929, 1998 WL 23842. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 73} As is stated above, the trial court, in its November 15, 2006 Judgment Entry, awarded appellee the marital home, which is valued at $137,000.00, and ordered that appellant assume responsibility for the $46,904.00 mortgage loan. Appellant now argues that, in so doing, the trial court abused its discretion since appellee is left with a house free and clear and also has no marital debts to pay while he *Page 16 
lives in a small one bedroom apartment and is saddled with paying all of the parties' $30,916.00 in credit card debt, the vehicle loan on the Dodge Caravan, the mortgage loan on the marital residence, a portion of appellee's attorney fees and "a judgment to the appellee in the amount of $38,889.00."
 {¶ 74} However, the marital residence was awarded to appellee as part of the allocation of assets in order to equalize the property division. The trial court awarded the home to appellee based on the fact that appellant's retirement benefits far exceeded those of appellee. Moreover, testimony adduced at trial established that appellee was living in the marital home with the parties' son and his adult children, the parties' grandchildren. Finally, as discussed in our disposition of appellant's first assignment of error, after credits are applied, the equalization payment from appellant to appellee is reduced to $15,437.00 rather than $38,889.00.
 {¶ 75} Based on the foregoing, we cannot say that the trial court abused its discretion in awarding the marital home to appellee. The trial court's decision was not arbitrary, unconscionable or unreasonable.
 {¶ 76} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 77} Appellant, in his third assignment of error, argues that the trial court erred in failing to award him his separate property. We disagree.
 {¶ 78} Pursuant to R.C. 3105.171(A)(6)(a)(i), separate property includes any real or personal property or interest in property that was inherited by one spouse during the course of the marriage. The commingling of separate property with other property of any type does not destroy its identity as separate, except when the separate property is *Page 17 
not traceable. R.C. 3105.171(A)(6)(b). The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. Hildebrand v.Hildebrand, Morrow Appellate No. 954, 2003-Ohio-3654 .
 {¶ 79} In the case sub judice, there was testimony at trial that, during the parties' marriage, appellant inherited both money and property from his mother. Appellant inherited $10,782.00 in cash, four savings bonds worth $1,097.69 and a condo that appellant sold and realized $74, 713.00. It is undisputed that appellant placed all of the money (except for the savings bonds) in a savings account in his name, that appellee did not place any money into the account, and that, as of the time of the hearing, the account had a balance of approximately $11,000.00. The trial court, in its November 15, 2006, Judgment Entry, awarded such money to appellant as his separate property.
 {¶ 80} However, appellant now argues that the money he received from his mother was used to make improvements to the marital home and to purchase specified items of personal property and that he should be credited with the same. Appellant specifically maintains that he spent $6,000.00 of his inheritance on a new sidewalk and driveway and that the trial court "erred by failing to take into consideration the appellant's separate property contribution in the amount of $6,000 to the parties' real estate." Appellant also contends that he spent $7,197.00 on a refrigerator, stove, microwave, washer, computer and television and argues that "these items of personal property should have been awarded to the appellant, as his separate property, or he should have received a credit in the amount of $7,197.00 for their value." *Page 18 
 {¶ 81} However, appellant did not provide the trial court with any documentation or other evidence demonstrating that he used his separate funds to purchase the items listed above or to put in a new driveway and sidewalk. At the hearing in this matter, appellant testified that he did not have any documentation corroborating his testimony that he purchased the same out of his inheritance. The following is an excerpt from appellant's testimony on cross-examination:
 {¶ 82} "Q. Do you have any documentation from the Fiberglas Federal Credit Union account that you testified is in your name to show a six thousand dollar payment for somebody to ___ to replace or repair the driveway?
 {¶ 83} "A. No, I don't.
 {¶ 84} "Q. All right. Do you have any documentation, Mr. Wheeler, today to support any of these purchases with respect to any appliances or any of these items that you've testified that you purchased out that inheritance?
 {¶ 85} "A. No, I don't." Transcript at 95-96.
 {¶ 86} Based on the foregoing, we find that the trial court did not abuse its discretion in failing to award appellant his alleged separate property. We concur with the trial court that any improvements in the form of repairs or maintenance to the real property "are not traceable and have lost their identity as separate property." Additionally, these items are most likely worth a fraction of the value of the initial investment.
 {¶ 87} Appellant's third assignment of error is, therefore, overruled. *Page 19 
 IV {¶ 88} Appellant, in his fourth assignment of error, argues that the trial court abused its discretion in granting the appellee an award of attorney fees. We disagree.
 {¶ 89} An award of attorney's fees lies within the sound discretion of the trial court. Rand v. Rand (1985), 18 Ohio St.3d 356, 359,481 N.E.2d 609. R.C. 3105.73(A) reads as follows: "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."
 {¶ 90} The trial court, in its November 15, 2006 Judgment Entry, ordered appellant to pay the remaining balance of appellee's attorney fees of $4,190.00 within thirty days. The trial court found that "this is equitable and that the Plaintiff [appellant] has sufficient assets and funds to pay said fees."
 {¶ 91} Appellant now argues, in part, that the trial court erred in ordering him to pay the attorney fees because he does not have the financial recourses to pay the same. Appellant notes that he receives $2,662.00 a month in retirement and social security and that his monthly expenses are $2,243.66. Appellant also notes that, in addition, he is responsible for paying the parties' credit card debt, which costs $809.00 per month. Appellant further notes that he already paid $4,000.00 of appellee's attorney fees and that he has incurred approximately $13,000.00 in attorney fees of his own. *Page 20 
 {¶ 92} We find, upon our review of the record, that the trial court did not abuse its discretion in ordering appellant to pay the $4,190.00 in attorney fees. The trial court's decision was not arbitrary, unconscionable or unreasonable. Appellee's monthly income totals only $1,042.00 and she has a savings account containing only $5.00 whereas appellant has a monthly income of $2,662.00 and has $11,000.00 in his account. Moreover, while appellant contends that he should not be ordered to pay the attorney fees because appellee engaged in financial misconduct by withdrawing money from the parties' joint account after the two had separated and the divorce was initiated, the testimony established that appellee used such money to pay attorney fees and household bills.
 {¶ 93} However, while we find that the trial court did not abuse its discretion in ordering appellant to pay the $4,190.00, we find that the trial court did abuse its discretion in ordering the same to be paid within thirty days. Based on appellant's income and debts, the trial court should have ordered that the fees are to be paid within 24 months at no less than $100.00 per month or some similar type of payment arrangement.
 {¶ 94} Appellant's fourth assignment of error is, therefore, overruled in part and sustained in part. *Page 21 
 {¶ 95} Accordingly, the judgment of the Licking County Court of Common Pleas Domestic Relations Division is affirmed in part and reversed and remanded in part.
 Edwards, J. Farmer, P.J. and Wise, J. concur *Page 22 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed and remanded in part. Costs assessed 80% to appellant and 20% to appellee.
[1] Appellee, in such Exhibit, assigned no value to the chest of drawers and a $350.00 value to the television. *Page 1