OPINION *Page 2 
{¶ 1} Plaintiff-appellant Ruth May appeals from the September 29, 2006, Judgment Entry of the Richland County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Ruth May and appellee Ernest May were married on October 26, 1990. No children were born as issue of such marriage.
 {¶ 3} On July 19, 2004, appellant filed a complaint for divorce against appellee. A hearing on appellant's complaint was held before a Magistrate on February 22, 2006. The following testimony was adduced at the hearing.
 {¶ 4} At the hearing, appellant testified that, at the time of the parties' marriage, she owned a house in Southgate, Michigan with a value of $85,000.00. After the marriage, the parties moved into a house that appellee owned in Grayling, Michigan. Appellant testified that, after the marriage, the Southgate, Michigan house was sold and that $56,000.00 remained after the mortgage and other expenses were paid.
 {¶ 5} According to appellant, the parties used approximately $20,000.00 of the $56,000.00 in proceeds from the sale of the Southgate, Michigan property to have a pole barn built at the house owned by appellee in Grayling, Michigan and used $26,000.00 of the proceeds to pay off appellee's 1998 truck. Appellant also testified that the parties used part of the proceeds to purchase new kitchen appliances, new siding and a new front porch and for carpeting and other remodeling.
 {¶ 6} At the hearing, appellant was questioned about appellee's gun collection. Appellant testified that she sat down with appellee and inventoried the collection a *Page 3 
couple of years before and that appellee had 23 riffles and 9 handguns at the time. Appellant testified that, in February of 2006, the guns were appraised. The appraisal, which was admitted as Plaintiffs Exhibit 1, contains 23 guns.
 {¶ 7} Appellant also testified that, when she left appellee, his monthly income was $4,300.00. After she left appellee, appellant moved in with her son for awhile and then moved in with her sister. Appellant testified that, as of the time of the hearing, she was living with her sister because she did not have the money to move out. Appellant testified that she planned to get a part-time job and that she had worked for four (4) months "last year" before being laid off because the work was seasonal. Appellant also testified that she was living off of her family and had no income. Appellant further testified that she would start receiving $300.00 a month from Frito-Lay, where she had worked for 11 years before retiring in 1998, once she turned 62. Appellant was 57 years old as of the time of the hearing.
 {¶ 8} When questioned about her health, appellant testified that she had surgery on both hands for carpal tunnel and she has arthritis in her hands and has trouble working with them. She also testified she was going to need knee replacement surgery. The only insurance appellant had was through appellee.
 {¶ 9} At the hearing, appellant also testified that she had a coin collection that was in appellee's name. Appellant testified that she believed the coin collection had a value of between $4,000.00 and $5,000.00, although the same had never been appraised. Appellant also testified that she and appellee had a plate collection, although she disagreed with the $15,000.00 value appellee had placed on the same. Appellant testified that she believed that such value was too high. *Page 4 
 {¶ 10} On cross-examination, appellant testified that she worked from January through July of 2005 and earned $8.00 an hour for a mostly 40 hour work week. Appellant then received unemployment compensation. Appellant also was questioned about the house in Grayling, Michigan owned by appellee. The following is an excerpt from appellant's testimony on cross-examination:
 {¶ 11} "Q. Okay. And when you went to Grayling, the property was paid for, there were no liens against it, right?
 {¶ 12} "A. Yes.
 {¶ 13} "Q. Currently there is over $50,000.00 in liens against it, isn't there?
 {¶ 14} "A. I don't know exactly now.
 {¶ 15} "Q. Okay, when you — let me help you a little bit. When you filled out your financial affidavit for this court, you said that there was a first mortgage of 38,000 and a second mortgage of 14,000. Were those — when you wrote that down was that true?
 {¶ 16} "A. Yeah, it was an equity loan." Transcript at 37.
 {¶ 17} Appellee testified that the $14,000.00 equity loan was squandered away and that they used the $35,000.00 to go into business with her sister and brother in-law. Appellee testified that her sister, who ran the business, paid part of the money back, but that the business went bankrupt.
 {¶ 18} Appellant conceded that she listed $52,000.00 on her affidavit as having been borrowed against appellee's house in Grayling, Michigan and that appellee still had to pay back the $52,000.00. Appellant acknowledged that an appraisal of the house that was obtained by appellee determined that the house was worth $51,000.00. No other appraisals of the house were obtained. *Page 5 
 {¶ 19} On cross-examination, appellant also conceded that, when the parties were married, she was about to lose her house in Southgate, Michigan and that she refinanced the same with appellee who then helped with the payments. According to appellant, both the Southgate house and the Grayling house were put into both names. Appellant also testified that she was paying her sister between $200.00 and $300.00 a month in rent, $50.00 a month for gasoline, $30.00 a month for car maintenance, $40.00 a month for car insurance, $100.00 a month for life insurance and $300.00 a month for groceries and other items. On redirect, appellant testified that she did not pay $300.00 a month for groceries and clothes. She testified that she paid between $150.00 and $200.00 a month for the same.
 {¶ 20} At the hearing in this matter, appellee testified that he was retired from Chrysler Corporation and received a monthly pension of $1,100.00 in addition to his monthly $1,300.00 social security check. Appellee testified that, at the time of the marriage, he owned property in Grayling that was paid for, but that the same was not currently free and clear. When questioned about what was owed on such property, appellee testified that approximately $58,000.00 was owed. Of the $58,000.00, approximately $38,000.00 was for a mortgage and $14,000.00 for a line of credit.
 {¶ 21} Appellee also testified that of the $56,000.00 in proceeds from the sale of the house in Southgate, Michigan, $20,000.00 was used to build a pole barn and $7,000.00 was used to put in a driveway at the Grayling property. Appellee, who was 64 years old, also testified that he had had three heart attacks and had a pacemaker. Testimony was adduced that appellee's monthly living expenses totaled $1,551.00. *Page 6 
 {¶ 22} Testimony also was adduced at the hearing that the parties had a knife collection worth $360.00, a coin collection worth $5,000.00, and a plate collection worth $15,000.00.
 {¶ 23} The Magistrate, in a Decision filed on June 29, 2006, recommended that appellant be awarded the plate collection and that appellee receive the Grayling residence, the coin collection, the knife collection, and nine (9) guns, which were worth $6,425.00.[1] The Magistrate also recommended that appellee pay appellant $2,357.28 to equalize the property division and that appellee pay appellant the sum of $625.00 a month as and for spousal support for a period of five years. After appellant filed objections to the Magistrate's Decision, the trial court overruled appellant's objections and accepted the Magistrate's Decision. A Judgment Entry Decree of Divorce was filed on November 27, 2006.
 {¶ 24} Appellant now raises the following assignments of error on appeal:
 {¶ 25} "I. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO APPELLANT'S PREJUDICE IN FASHIONING AN UNEQUITABLE DIVISION OF PROPERTY AWARD UNDER THE FACTS OF THE INSTANT CASE.
 {¶ 26} "II. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO APPELLANT'S PREJUDICE IN CALCULATING AN UNEQUITABLE SPOUSAL SUPPORT AWARD."
 I *Page 7 {¶ 27} Appellant, in her first assignment of error, argues that the trial court erred in its property division. Appellant specifically contends that the trial court's property division was inequitable. We disagree.
 {¶ 28} A review of a trial court's division of marital property is governed by the abuse of discretion standard. Martin v. Martin (1985),18 Ohio St.3d 292, 480 N.E.2d 1112. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. See Middendorf v.Middendorf, 82 Ohio St .3d 397, 1998-Ohio-403, 696 N.E.2d 575. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 29} Appellant specifically maintains that the property division was unreasonable for a number of reasons. Appellant notes that the Southgate, Michigan property was her separate property and that the $56,000.00 in proceeds from the sale of such property went into the marital property[2] located in Grayling, Michigan. Appellant now argues that the trial court abused its discretion in awarding the Grayling property to appellee and not ordering that the same be sold and the proceeds given to her to reimburse appellant for the $56,000.00.
 {¶ 30} However, the appraisal submitted at the hearing as Defendant's Exhibit C valued the Grayling property at $51,014.00. No other appraisals were admitted at the hearing and evidence was adduced that the property is subject to a mortgage in the amount of $42,149.28 and a line of credit with a balance of $14,118.16. Thus, as noted by the Magistrate, there is negative equity in the Grayling property. Not only was *Page 8 
appellee awarded the Grayling property, but the trial court ordered that he be responsible for the over $56,000.00 debt associated with the same. If the property were ordered sold, neither appellant nor appellee would receive anything from the sale. We find, therefore, that the trial court did not err in not ordering the sale of the Grayling, Michigan property.
 {¶ 31} Appellant also argues that the trial court erred in awarding appellee the gun collection (worth $6,425.00), the knife collection (worth $360.00) and the coin collection (worth $5,000.00). Appellant contends that the trial court should have ordered these collections sold with half the proceeds going to appellee.
 {¶ 32} However, upon our review of the trial court's property division as a whole, we find that the same is not inequitable. While appellee was awarded the above collections, which had a combined value of $11,785.00, appellant was awarded the parties' plate collection, which had a value of $15,000.00.
 {¶ 33} Finally, while appellant argues that the trial court erred in failing to order the sale of appellee's 1998 truck, the Magistrate, in her decision, found that the parties no longer owned the same. Appellant did not challenge such finding.
 {¶ 34} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 35} Appellant, in her second assignment of error, argues that the trial court abused its discretion in awarding her spousal support in the amount of $625.00 for five years. We disagree.
 {¶ 36} A review of a trial court's decision relative to spousal support is governed by an abuse of discretion standard. Cherry v.Cherry (1981), 66 Ohio St.2d 348, *Page 9 421 N.E.2d 1293. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 541 N.E.2d 597. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E2d 1140.
 {¶ 37} R.C. 3105.18(C)(1)(a) through (n) sets forth the factors a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment and duration of spousal support. These factors are:
 {¶ 38} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 39} "(b) The relative earning abilities of the parties;
 {¶ 40} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 41} "(d) The retirement benefits of the parties;
 {¶ 42} "(e) The duration of the marriage;
 {¶ 43} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 44} "(g) The standard of living of the parties established during the marriage;
 {¶ 45} "(h) The relative extent of education of the parties; *Page 10 
 {¶ 46} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 47} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 48} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 49} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 50} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 51} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 52} In the case sub judice, testimony was adduced at the hearing that appellant was 57 years old and had a GED. Testimony also was adduced that she has carpal tunnel and arthritis, has had surgery on her hands and may need knee surgery. From January 1, 2005, through July of 2005, appellant earned $8.00 an hour working approximately 40 hours a week. Testimony also was adduced that she received unemployment compensation in the amount of $306.00 every two weeks from August of *Page 11 
2005 through the second week of January of 2006.[3] At the hearing, appellant testified that she could be employed as a cashier or in "light duty" position. Transcript at 34.
 {¶ 53} Testimony also was adduced at the hearing that appellant will began receiving pension benefits in the amount of $300.00 a month once she reaches the age of 62 and that her currently monthly expenses are $1,440.00 per month, including the costs ($680.00 a month) of COBRA health insurance. Appellee testified at the hearing that she paid her sister, with whom she was living, between $200.00 and $300.00 a month in rent depending on what her income was at the time. Appellant's separate credit card debt was $5,000.00.
 {¶ 54} In turn, testimony was adduced that appellee, who was 64 years old as of the hearing, has a total monthly income of $2,464.00 and monthly expenses of $1,551.00. Testimony was adduced that appellee has had three heart attacks since January of 2005 and has a pacemaker. Appellee has a high school diploma.
 {¶ 55} Based on the foregoing, we find that the trial court's decision to award appellant $625.00 a month in spousal support for five years was not arbitrary, unconscionable or unreasonable. There was credible testimony before the trial court that appellant can work and earn at least minimum wage while appellee, due to his significant health problems, cannot.
 {¶ 56} Appellant's second assignment of error is, therefore, overruled. *Page 12 
 {¶ 57} Accordingly, the judgment of the Richland County Court of Common Pleas, Domestic Relations Division is affirmed.
Edwards, J., Farmer, P.J., and Delaney, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas, Domestic Relations Division is affirmed. Costs assessed to appellant.
[1] The Magistrate, in her decision, found that three (3) other guns were appellee's separate property and that only nine (9) guns were marital property. The Magistrate further found appellee's testimony as to the number of guns currently owned by the parties more credible than appellant's.
[2] Appellant, in her brief, also notes that $26,000.00 of the sum was used to pay off appellee's 1998 truck.
[3] The Magistrate, in her decision, found that appellant's 2005 income was $12,966.00. *Page 1