[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 397.]

MIDDENDORF, APPELLEE, *v.* MIDDENDORF, APPELLANT.

[Cite as *Middendorf v. Middendorf*, 1998-Ohio-403.]

*Domestic relations—Equitable division of marital and separate property—Under R.C. 3105.171, an increase in the value of separate property due to either spouse's efforts is marital property.*

Under R.C. 3105.171, an increase in the value of separate property due to either spouse's efforts is marital property.

(No. 97-261—Submitted April 22, 1998 at the Seneca County Session—Decided July 29, 1998.)

APPEAL from the Court of Appeals for Shelby County, No. 17-96-5.

————————————

{¶ 1} In December 1986, defendant-appellant Maximilian J. Middendorf ("Max") and plaintiff-appellee Patricia A. Middendorf ("Pat") were married. Max's three children from a previous marriage lived with Max and Pat after their marriage.

{¶ 2} When he was married to Pat, Max was a livestock buyer for Middendorf Stockyard Company, Inc. ("the stockyard"). Max and his brother co-own the stockyard. Pat was self-employed as an interior decorator but discontinued her business after her marriage to Max.

{¶ 3} During her marriage to Max, Pat undertook all the household duties including laundry, cleaning, ironing, shopping, and preparing meals. Due to the size of the family and their varied schedules, Pat would sometimes have to fix three separate meals per night. Pat also spent considerable time caring for the children.

{¶ 4} Pat made some contributions to company functions. She prepared and participated in company Christmas parties. Pat would occasionally take business messages at home for Max and then relay them to him. Pat redecorated Max's offices, as well as their home.

**{¶ 5}** On March 21, 1992, Max and Pat separated.  On April 6, 1992, Pat filed for legal separation.  Max answered and counterclaimed for divorce.

**{¶ 6}** A hearing was commenced on December 1, 1992, before a referee for purposes of dividing the couple's property.  During the hearing, both parties presented testimony from expert witnesses pertaining to the valuation of the stockyard and other assets held by Max.

**{¶ 7}** On April 9, 1993, the referee issued a report.  Relying on the definition of "marital property" in R.C. 3105.171(A)(3)(iii), the referee found that Max's interest in the stockyard was his separate property, and that "the Plaintiff has failed to provide this Court with sufficient evidence to determine the 'appreciation' of this asset during the term of the marriage.  Obviously, if the Court has insufficient evidence before it to measure the growth of the Defendant's separate property, it simply cannot award the Plaintiff a proportionate share of that growth."

**{¶ 8}** Both Max and Pat filed objections to the referee's report. After slightly modifying the report on a point not relevant to this appeal, the trial court overruled all objections and adopted the report.

**{¶ 9}** The parties were granted a divorce on November 29, 1993.

**{¶ 10}** Pat appealed and Max cross-appealed the trial court's decision.  On June 8, 1994, the appellate court issued a judgment entry dismissing the appeal for lack of a final appealable order and remanding the cause to the trial court with instructions.  Specifically, the appellate court found:

"[T]he court failed to place values on much of the marital property.  It was determined by the trial court that any appreciation in the worth of Middendorf Stockyards during the parties' marriage was marital property.  However, given the confusing state of the evidence on the valuation of the business, and the fact that the valuations were hundreds of thousands of dollars apart, we conclude that the court should have required additional evidence on the valuation of [Max's] businesses."

{¶ 11} On October 23 and 24, 1995, a magistrate heard the case on remand to determine, *inter alia*, whether there had been any appreciation of Max's interest in the stockyard during Max and Pat's marriage.  On remand, the magistrate, on behalf of the court, hired an expert, Philip A. Brandt, a certified public accountant and attorney, to value the stockyard.  Brandt testified that the value of Max's one-half interest in the stockyard in December 1986 was $201,389.  Brandt testified that the value of Max's interest in December 1992 was $309,930, an increase of $108,541.

{¶ 12} Daniel K. Thompson, a certified public accountant and attorney, testified on Max's behalf.  Thompson testified that from December 1986 to December  1992, Max's interest  in the stockyard increased in value by $88,746.  The magistrate determined that Brandt's testimony was credible and, accordingly, he found that Max's share of the stockyard increased in value during the course of the marriage in the amount of $108,541.  The magistrate further found that this increase in value was marital property "because the increase is the direct result of the labor or in-kind contribution of one of the spouses that occurred during the marriage, that spouse being Max Middendorf."  Finally, the magistrate determined that Pat was entitled to half of the $108,541 increase in value, that being $54,270.50.

{¶ 13} Both Max and Pat filed objections to the magistrate's findings. On March 14, 1996, through its opinion, the court adopted the magistrate's finding that the increase in the value of the stockyard during the parties' marriage was marital property, and awarded $54,270.50 to Pat.

{¶ 14} Max appealed the trial court's decision.  Pat cross-appealed.  One of Max's assignments of error was that the trial court had erred in finding that the increased value of his interest in the stockyard during the parties' marriage was marital property.  The appellate court overruled the assignment of error, finding that the trial court correctly determined that the increase was marital property.

**{¶ 15}** This cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*James R. Kirkland*, for appellee.

*Elsass, Wallace, Evans, Schnelle & Co., L.P.A.*, *Richard H. Wallace*, *Stanley R. Evans* and *Thomas A. Ballato*, for appellant.

_____

**LUNDBERG STRATTON, J.**

**{¶ 16}** In this case, we examine the legal standards for determining when appreciation in separate property becomes marital property for purposes of the division of property in a domestic relations case under R.C. 3105.171. Max asserts that in order for a court to determine that an increase in separate property is marital property, the court must find that *both* spouses have expended significant marital funds or labor directly contributing to the increase or that the non-owning spouse must contribute substantial work to improvement and maintenance of the separate property. We disagree.

**{¶ 17}** In *Worthington v. Worthington* (1986), 21 Ohio St.3d 73, 21 OBR 371, 488 N.E.2d 150, this court affirmed a trial court's decision that held that the increase in value of separate property is marital property where the increase in value is the result of the couples' expenditure of a substantial sum of marital funds and labor. The court in *Worthington* held:

"A trial court, in determining the division of property pursuant to the factors contained in R.C. 3105.18 and all other relevant factors, does not abuse its discretion by apportioning the appreciation in value of non-marital property as a marital asset, where significant *marital funds and labor* are expended to improve and maintain such property." (Emphasis added.) *Id.* at syllabus.

**{¶ 18}** However, the General Assembly codified a new definition of "marital" and "separate property" in R.C. 3105.171, which became effective on

4

January 1, 1991. 143 Ohio Laws, Part III, 5226, 5452. R.C. 3105.171(A)(3)(a), as amended, states:

" 'Marital property' means, subject to division (A)(3)(b) of this section, all of the following:

" * * *

"(iii) * * * all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of *either or both of the spouses* that occurred during the marriage." (Emphasis added.) 144 Ohio Laws, Part I, 1754-1755.

{¶ 19} R.C. 3105.171(A)(6)(a) states:

" 'Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

"* * *

"(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage."

{¶ 20} Finally, R.C. 3105.171(A)(4) states:

" 'Passive income' means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse."

{¶ 21} It is within the province of a court to construe laws enacted by the legislature. *Cowen v. State ex rel. Donovan* (1920), 101 Ohio St. 387, 397, 129 N.E. 719, 722. The primary purpose of interpretation is to ascertain the intent of the legislature. *Ohio Assn. of Pub. School Emp. v. Twin Valley Local School Dist. Bd. of Edn.* (1983), 6 Ohio St.3d 178, 181, 6 OBR 235, 237-238, 451 N.E.2d 1211, 1214. In interpreting legislative intent, the court must first look to the language of the statute. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381. If the language of the statute is unambiguous, then the statute must be applied pursuant to its plain meaning. *Id.* at 105-106, 65 O.O.2d at 298, 304 N.E.2d at 381.

**{¶ 22}** The plain language of R.C. 3105.17(A)(3)(a)(iii) unambiguously mandates that when *either* spouse makes a labor, money, or an in-kind contribution that *causes* an increase in the value of separate property, that increase in value is deemed marital property. *Kotkowski v. Kotkowski* (May 19, 1995), Portage App. 94-P-0027, unreported, 1995 WL 378681; *Hansen v. Hansen* (Dec. 11, 1992), Lake App. No. 92-L-052, unreported, at 8, 1992 WL 366885.

**{¶ 23}** The definition in R.C. 3105.171(A)(3)(a)(iii) differs from the "joint efforts" test in *Worthington* in that *Worthington* required an effort by *both* spouses before any increase in the value of separate property due to such efforts would be classified as marital property. R.C. 3105.171(A)(3)(a)(iii) requires only an expenditure or effort by *either* spouse. Thus, R.C. 3105.171(A)(3)(a)(iii) in effect supersedes *Worthington* for purposes of defining when appreciation of separate property is marital property. *Nine v. Nine* (Mar. 1, 1995), Summit App. No. 16625, unreported, 1995 WL 89478. Accordingly, the appellate court did not err in affirming the trial court's interpretation of R.C. 3105.171, that an increase in the value of separate property due to *either* spouse's efforts is marital property.

**{¶ 24}** We must now determine if there was sufficient evidence to support the trial court's determination that there was an increase in the value of the stockyard during Max and Pat's marriage and that the increase was *due to* the labor, money or in-kind contributions made by Max. R.C. 3105.171(A)(3)(a)(iii). If the evidence indicates that the appreciation of the separate property is *not due* to the input of Max's (or Pat's) labor, money, or in-kind contributions, the increase in the value of the stockyard is passive appreciation and remains separate property. R.C. 3105.171(A)(6)(a)(iii); 3105.17(A)(4); see, also, *Roberts v. Roberts* (Feb. 18, 1993), Highland App. No. 92 CA 800, unreported, 1993 WL 49461.

**{¶ 25}** A trial court has broad discretion in making divisions of property in domestic cases. *Berish v. Berish* (1982), 69 Ohio St.2d 318, 23 O.O.3d 296, 432 N.E.2d 183. A trial court's decision will be upheld absent an abuse of discretion.

*Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 541 N.E.2d 597; *Martin v. Martin* (1985), 18 Ohio St.3d 292, 294-295, 18 OBR 342, 344, 480 N.E.2d 1112, 1114. "Abuse of discretion" is more than an error of law or judgment; it implies that the court acted in an unreasonable, arbitrary, or unconscionable fashion. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion. *Ross v. Ross* (1980), 64 Ohio St.2d 203, 18 O.O.3d 414, 414 N.E.2d 426. Therefore, if there is some competent, credible evidence that there was an increase in the value of the stockyard during the marriage and that the increase in the valuation was due to labor, money, or in-kind contributions of either Max or Pat, or both, the increase in valuation is classified as marital property and subject to division.

{¶ 26} On remand from the court of appeals, the magistrate hired Philip Brandt as an independent expert to value the stockyard. Brandt testified that the value of the stockyard when the Middendorfs were married was $201,389 and the value in December 1992, the stipulated date for purposes of determining value, was $309,930. Thus, the increase was $108,541. Both the magistrate and the court rejected the defense expert's testimony and found the court-appointed expert more credible. This testimony provided credible evidence of an increase in the value of the stockyard during the Middendorfs' marriage.

{¶ 27} The second issue upon which we must determine if credible evidence has been submitted is whether this increase in value of the stockyard was *due to* labor, monetary, or in-kind contribution by Max.

{¶ 28} The stockyard business primarily involves buying hogs from farmers and then reselling them to the slaughterhouse. As a sideline, the stockyard would contract with farmers to feed the hogs until the hogs reached a marketable size, whereupon they would be sold to a meatpacking company. This arrangement has a reciprocal benefit: the farmer is relieved of the risks associated with owning the

hog (disease, market fluctuation) and the stockyard is relieved of having to care for the hogs.

{¶ 29} Max argues that there is no evidence that the increase in the stockyard's value was due to his funds or labor. Max asserts that the increase was due solely to passive appreciation from "market changes." However, Max's position fails to take into account all of the other factors contributing to the increase.

{¶ 30} Passive forces such as market conditions may influence the profitability of a business. However, it is the employees and their labor input that make a company productive. In today's business environment, executives and managers figure heavily in the success or failure of a company, and in the attendant risks (*e.g.*, termination, demotion) and rewards (*e.g.*, bonuses, stock options) that go with the respective position. These individuals are the persons responsible for making pivotal decisions that result in the success or failure of the company. There is no reason that these factors should not likewise be relevant in determining a spouse's input into the success of a business.

{¶ 31} It is true that the stockyard business has inherent, uncontrollable risks, such as market fluctuation and death of the livestock due to disease, which affect profitability. However, monitoring market prices in order to make timely purchases and sales, deciding the numbers of hogs purchased, and deciding whether to contract with farmers to care for hogs are a few of the calculated decisions made by the stockyard management that also affect profitability. Thus, no matter how high hog prices went, the business would not operate, let alone increase in value, without the necessary ingredients of labor and leadership from the owners and management. Making these calculated decisions was part of Max's responsibilities as a livestock buyer and co-owner of the stockyard. Max testified that he spent long hours working there, which included buying and selling hogs.

{¶ 32} Both the trial court and the court of appeals found that these efforts directly contributed to the appreciation of the company assets. The trial court found

that "the increase in value of Middendorf Stockyard Company was the direct result of the pivotal role which [Max] played in the management of the company during the course of the marriage." The appeals court found that the Max "played a vital role in the management of the Stockyards. * * * [He] clearly dedicated himself to his work, spending significant amounts of time working to keep his business profitable in an increasingly risky market." Absent an abuse of discretion, we will not disturb these findings of fact.

{¶ 33} Although we note that Pat contributed substantial efforts to the family relationship that freed Max of the responsibilities of the home and children and enabled him to devote more time to the business, we need not reach the issue of the value of her contributions. Because Max's efforts contributed to the appreciation of the Middendorf Stockyards, the requirements of R.C. 3105.171(A)(3)(a)(iii) are met, as the statute requires the contribution of only one spouse. Thus, we find some competent, credible evidence that Max's interest in the stockyard increased in value by $108,541, during Max and Pat's marriage, due to Max's labor. Therefore, the trial court did not abuse its discretion in finding that the $108,541 appreciation of the stockyard was a marital asset to be divided between Max and Pat. Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____