I respectfully dissent in judgment and opinion from the majority decision for the following reasons.
In its January 30, 1995 judgment entry, the trial court concluded that the parties' antenuptial agreement was both fair and equitable to the extent that it removed from division any value of Cortland Motors as of October 18, 1989, the date the parties entered into the agreement. Moreover, the court also concluded that the agreement accurately set out the value of appellant's premarital home, and that the home was appellant's separate property.
Nevertheless, the trial court made the following findings of fact with respect to the subsequent division of property. First, the court determined that the value of the dealership at the time the agreement was entered into was $100,000 rather than the $105,000 value stated in the agreement, and that the dealership had increased in value to approximately $182,000 as of the date of the final divorce hearing. Based on these figures, the court found that the marital equity in the dealership was $82,000 minus certain liabilities. The trial court ordered that the marital equity in the dealership be equally divided between the parties.
The trial court also found, in accordance with the parties' agreement, that the home appellant owned before the marriage had been subject to two separate mortgages at the time the agreement was completed. Based on the evidence introduced during the hearing, the trial court found that the mortgages had been paid down a total of $5,400. Accordingly, the trial court determined that the parties were each entitled to an equal credit of $2,700, irrespective of which party actually made the payments. This distribution was made despite the court's determination that the value of the home set forth in the agreement was accurate, and that the home was appellant's separate property.
Appellant appealed the trial court's decision, challenging the court's determination that the increased value of the dealership and home was marital property. After reviewing the trial court's January 30, 1995 judgment entry, we remanded the case so that the trial court could clarify its finding that the agreement was fair and equitable in light of its subsequent property distribution.
On remand, the trial court reexamined its earlier decision. In doing so, the trial court concluded that there was no fraud, duress, coercion, or overreaching on the part of appellant, and that the agreement did not encourage divorce. Despite this, the trial court proceeded to find that the agreement was invalid because it was not based on full disclosure or full knowledge and understanding of the nature, value, and extent of the parties' property. Specifically, the trial court took issue with the fact that the agreement did not protect any of appellee's assets, the most important of which was her pension. However, in closely examining the record in this case, this writer fails to perceive any evidence in the record to support the trial court's finding that there was a lack of full disclosure with regard to the antenuptial agreement entered into by the parties, or a coextensive lack of full knowledge and understanding on appellee's part as to the nature, value, and extent of the property of either or both of the parties prior to executing this agreement.
The fact that the agreement did not include any of appellee's property should not lead to the singular conclusion that there was no full disclosure of the parties' assets. There were no allegations or a scintilla of evidence at trial that appellant attempted to hide assets from appellee or understate their value. Moreover, in rendering its decision, the trial court did not focus on appellant's assets, but instead, based its decision of the absence of appellee's assets from the agreement. How appellant was at fault for this omission is not explained by the trial court in its judgment entry and is not readily ascertainable from a review of the proceedings.
When this court remanded the matter for the third time, we noted our confusion with respect to the trial court's initial finding that the antenuptial agreement here was fair and equitable, and that the home and dealership were premarital assets of appellant. We felt that this finding conflicted with the subsequent disposition of the parties' property. The trial court, in its January 18, 2000 judgment entry, reiterated in a manner expressly contradictory to the antenuptial agreement, that the increase in value of these respective properties subsequent to marriage was a marital asset subject to an equitable division. However, as indicated by the majority, the trial court embellished its original finding by concluding that the agreement was not based on full disclosure or knowledge and understanding on appellee's part of the nature, value, and extent, as I more specifically perceive, of appellant's premarital property, and the observation that the agreement failed to protect appellee's assets.
Although not expressly so stated, I note that the emphasis here by the trial court and the majority appears to be on appellee's "understanding." Again, the lack of this specificity is obviously missing in the trial court's first set of findings in the January 30, 1995 judgment entry, which makes this writer wonder whether the trial court added the lack of disclosure analysis only as an afterthought.
In light of her superior position with respect to her own property, I believe that the burden should have been on appellee to protect her own assets. There is nothing in the record to suggest that she ever attempted to do so. Moreover, nothing under the circumstances here prevented the trial court from effectuating a property division under which appellee's pension benefits would be awarded her in the general division of property in its final judgment entry.
Furthermore, there were no allegations that appellant prevented appellee from including her assets in the antenuptial agreement, or that he would have balked in marrying appellee if she would have made such a request. Thus, I would conclude that there was no competent, credible evidence to support the trial court's finding that the agreement was invalid for the most part based on a lack of full disclosure. Nor is there a shred of evidence in this record which manifests that appellee did not have a full understanding of the subject matter of the antenuptial agreement involved here or its practical effect on any prospective claims she might make with respect to it. See, generally, Grossv. Gross (1984), 11 Ohio St.3d 99, 102.
With this in mind, the case at bar becomes one of simple contract enforcement.
As noted by the majority, antenuptial agreements are contracts and will be upheld so long as certain requirements are met. Fletcherv. Fletcher (1994), 68 Ohio St.3d 464, 466. The parties' agreement includes a clause in which appellant and appellee concede that the provisions of the agreement shall applyirrespective of whether or not the parties contribute their personal efforts, skills, or services in the acquisition of any real or personal property titled in the other spouse's name. Thus, it is quite apparent to this writer that appellee unequivocally waived any right to the separate property of appellant, including the right to share in the increased value of either the dealership or the home. As a result, the trial court should have enforced the antenuptial agreement as agreed to by the parties and awarded appellant the full value of his separate property.
I also take issue with the majority's conclusion that there was some competent, credible evidence to support the trial court's finding that the increased value of the dealership and the home were the result of either appellant's or appellee's contribution during the marriage. The majority correctly states that the plain language of R.C. 3105.171(A)(3)(a)(iii) requires that when either spouse makes a labor, money, or in-kind contribution to a spouse's separate property, that increase is deemed to be marital property.Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, paragraph one of the syllabus. However, any appreciation that results from an increase in the fair market value of separate property due its location or inflation is considered passive income and is not subject to an equitable division. R.C. 3105.171(A)(6)(a)(iii);Bugos v. Bugos (Oct. 15, 1999), Trumbull App. No. 98-T-0141, unreported, 1999 Ohio App. LEXIS 4875.
In the instant matter, the trial court found that the entire increase in value of the dealership was marital property. While there was some evidence that appellant had actively purchased additional cars for resale during the course of the marriage, the court failed to consider whether or not the fair market value of the dealership was also the result of its location or inflation. Thus, there should have been some analysis with respect to what portion of the dealership's value was due to appellant's efforts in increasing the profitability of the business, and as to what portion of the increase was the result of passive appreciation. I am certain that at least a part of the increased value had to be the result of passive appreciation and that it cannot be completely written off as due to appellant's efforts.
As for the home, the trial court concluded that appellee was entitled to one-half of the pay down of the mortgage that occurred during the course of the marriage. The majority agrees with this finding, ultimately holding that the reduction of a mortgage during a marriage is equivalent to a marital investment and should be considered marital property. See, generally, Goebel v. Werling
(July 28, 1999), Summit App. No. 19385, unreported, 1999 Ohio App. LEXIS 3443; Charles v. Charles (Jan. 22, 1997), Lorain App. No. 96CA006396, unreported, 1997 Ohio App. LEXIS 191.
I disagree with this proposition to the extent that it would apply in every situation where a mortgage on a spouse's separate property is decreased while a couple is married. For example, I would agree with the majority's conclusion if there were evidence that the mortgage payments had been paid from marital funds. However, in the absence of such evidence, I fail to see how the simple paying of the mortgage entitles the other spouse to a portion of the reduction, especially if the payment is made solely from the separate income of the paying spouse.
Here, there was no evidence that appellee participated in the paying of the mortgage. In fact, the evidence introduced at trial showed that the parties maintained separate banking accounts, and that they did not commingle their funds. Thus, it stands to reason, that appellee did not pay anything toward the reduction of the mortgage. While appellee may argue that by paying utilities on the home indirectly helped appellant reduce the mortgage, I believe that fact, standing alone, is insufficient to support a finding that she was entitled to one-half of the mortgage pay down because the trial court did not consider evidence with respect to which party made the mortgage payments.
For the foregoing reasons, I would reverse the judgment of the trial court.
 _________________________________ DONALD R. FORD, Presiding Judge