OPINION
{¶ 1} Defendant/Appellant Daniel Entingh and Plaintiff/Appellee Karen Entingh, nka Karen Wurmer, were married on July 20, 1994. They have no children. During the marriage Karen was a teacher, participating in the State Teachers Retirement System (STRS). As such, she cannot participate in the social security system. Daniel *Page 2 
was a full time employee in his family's business, Entingh Water Conditioning Company, and made regular contributions to his 401(k). Both Daniel and the business contributed to his social security account.
 {¶ 2} During the early years of the marriage, Daniel's parents gifted stock in the company to Daniel. Throughout the marriage Daniel was employed full time with the family business, holding various positions of increasing responsibility over the years, and in early 2001 he was made president of the company. Daniel holds 12.3% of the company's stock.
 {¶ 3} Karen filed a complaint for divorce on June 27, 2005. Daniel filed an answer and counterclaim for divorce two weeks later. The trial court issued its final judgment and decree of divorce on November 30, 2006. Daniel appeals from that judgment.
 {¶ 4} All three assignments of error contest aspects of the trial court's division of marital property, specifically the parties' retirement funds and the appreciation of Daniel's share of his family business that occurred during the course of the marriage.
 {¶ 5} A reviewing court is limited to determining whether a trial court abused its discretion in making a property division. Holcomb v.Holcomb (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597. The term "abuse of discretion" connotes a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. We will address each of Daniel's objections to the trial court's distribution of marital property with these principles in mind.
 I {¶ 6} Appellant's first assignment of error: *Page 3 
 {¶ 7} "THE TRIAL COURT'S VALUATION OF THE APPRECIATION OF DAN'S SHARES OF EWC STOCK DURING THE MARRIAGE IS AGAINST THE WEIGHT OF THE EVIDENCE AND CONSTITUTES AN ABUSE OF DISCRETION."
 {¶ 8} In his first assignment of error, Daniel contends that the trial court abused its discretion in accepting the testimony of Karen's expert witness over that of his own in regards to the increase in the value of Daniel's shares in his family business during the course of the marriage. We disagree.
 {¶ 9} "The trial court enjoys broad discretion in determining the value of a marital asset; however, this discretion is not limitless. Our task on appeal is not to require the adoption of any particular method of valuation, but to determine whether, based on all the relevant facts and circumstances, the court abused its discretion in arriving at a value." James v. James (1995), 101 Ohio App.3d 668, 681, 656 N.E.2d 399.
 {¶ 10} CPA John Bosse testified on Karen's behalf, while CPA Clifford Duane Kruer testified for Daniel. The parties stipulated to the expertise of both witnesses. Both men agreed that gift tax returns established the gifted value of Daniel's stock at $180,000. Bosse opined that this undervalued the stock, and he instead used a value of $195,460 when calculating the increase in the value of that stock.
 {¶ 11} Using the adjusted book value method to determine the company's fair market value upon the termination of the marriage, Bosse calculated that Daniel's 12.3% interest was worth $368,300, meaning an increase of $172,840 during the marriage. Kruer, on the other hand, insisted that the increased value was only $54,537. Thus, there was a significant discrepancy of $118,303 between the two *Page 4 
evaluations.
 {¶ 12} Kruer stated that the disparity was due in large part to Bosse's failure to consider marketability and minority discounts when calculating the increased value of the shares. Kruer claimed that 40% discounts were included in the original gift values and that he also applied discounts to the appreciated values. He did not explain why he used a much higher discount of 55% in his appreciated values. Kruer insisted that Bosse only used the discounts in the gift values, and not in the appreciated values, artificially inflating the increase.
 {¶ 13} To the contrary, Bosse explained that he did not believe that the gift amount had been discounted. However, even if it was, Bosse thought that amount to be understated, likely for tax purposes, and he did not use it in his calculations. Moreover, Bosse was of the opinion that the discounts were unnecessary due to the family nature of the business, with Daniel having significant input in the business decisions, and because Bosse did not add in any value for the good will of the business. Despite applying disparate discounts, Kruer also did not include good will in his valuation.
 {¶ 14} Another reason for the large discrepancy is that Kruer chose to omit many of the company's assets and sources of income when determining its present value. Kruer did not include any of the acquisitions or re-investments made by the company during the course of the marriage, instead relying only on the actual sales and profit margins. However, Bosse explained that the acquisitions and reinvestments are assets of the company used to generate further income, increasing the value of the company, and exclusion of those assets and their income artificially *Page 5 
decreases the appreciated value of the stock.
 {¶ 15} Having heard the testimony of both of the experts, the trial court found Bosse's adjusted book method to be the more equitable means of valuation of the appreciation of Daniel's share of the business. Because the trial court did not abuse its discretion in reaching this conclusion, Daniel's first assignment of error is overruled.
 II {¶ 16} Appellant's second assignment of error:
 {¶ 17} "THE TRIAL COURT'S DETERMINATION THAT 100% OF THE INCREASE IN VALUE OF DAN'S SHARES OF EWC STOCK IS MARITAL PROPERTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 18} Daniel maintains that the trial court abused its discretion in overstating the marital portion of the appreciation of stock Daniel owned in his family business during the course of the marriage. In support, Daniel argues that his father is responsible for the growth of the company and that his own credit for the increased value of the company is at most 75%. On the other hand, Karen claims that Daniel's father is just a figurehead and that Daniel, in fact, runs the business.
 {¶ 19} The trial court wisely refused to be drawn into the nearly impossible task of specifically determining what percentage of an increase in the value of a business is attributable to which of the owners. Instead, the court found that "[a]lthough all of the growth cannot be contributed to Daniel's work alone it is impossible to decipher precisely how much growth is directly attributable to him. It is also unnecessary to do so. The fact remains that while Daniel served as the president of this company, and worked there daily, the company's value increased. Said increase in value is marital *Page 6 
property to the extent of the parties' stock ownership." For the following reasons, we agree.
 {¶ 20} In support of his argument, Daniel relies on Herron v.Herron, Allen App. No. 1-04-23, 2004-Ohio-5765, wherein he insists that the court found that only 25% of increase in the value of the wife's share of a family business was marital property. To the contrary, however, a more careful reading of Herron reveals that the appellate court assigned the 25% interest in the company to Sheryl because there were four owners, each of whom contributed to the growth of the company. Accordingly, the court concluded that "25% of the increase in Robinson Fin during the time of the marriage was due to labor on the part of Sheryl." Id. at ¶ 21. Thus, the husband's marital portion was one-half of the increase in the value of his wife's 25% interest in her family company. Despite Daniel's claim to the contrary, the court did not find that only 25% of the increased value of Sheryl's 25% ownership was marital property.
 {¶ 21} The Ohio Supreme Court has held that "when either spouse makes a labor, money, or in-kind contribution that causes an increase in the value of separate property, that increase in value is deemed marital property." Middledorf v. Middledorf, 82 Ohio St.3d 397, 400,1998-Ohio-403, citations omitted. The Middledorf Court concluded that the entire value of the increase in the husband's portion of the business was a marital asset subject to division.
 {¶ 22} This Court has also held that the full value of an increase during marriage of the husband's partnership interest in his business was marital property subject to division. Maloney v. Maloney,160 Ohio App.3d 209, 2005-Ohio-1368, ¶ 4-16. See also, Wilson v. Wilson, Warren App. No. CA2004-04-037, 2004-Ohio-6248, cert. *Page 7 
denied, 105 Ohio St.3d 1470, 2005-Ohio-1186, wherein the court held that the full increase in the value of the husband's half interest in his business was marital property subject to division.
 {¶ 23} Here the parties agreed that Daniel's shares of EWC stock were gifted to him by his parents and were not marital property. Daniel's sole source of income throughout the entire marriage was his work at the family business, and his efforts directly contributed to the substantial growth of the business. The total increase in the value of that stock during the marriage was marital property as defined by R.C. §3105.171(A)(3)(a)(iii). Daniel's second assignment of error is overruled.
 III {¶ 24} Appellant's third assignment of error:
 {¶ 25} "THE TRIAL COURT ABUSED ITS DISCRETION AND FAILED TO EQUITABLY DISTRIBUTE THE PARTIES' RETIREMENT ACCOUNTS."
 {¶ 26} Finally, Daniel insists that only the increase in the value of his social security fund during the marriage should have been considered as marital property rather than the full value of his fund. Specifically, he maintains that the court should have applied a coverture fraction to determine what portion of the social security fund was marital property in accordance with Hoyt v. Hoyt (1990),53 Ohio St.3d 177, 559 N.E.2d 1292.
 {¶ 27} Pension or retirement benefits earned during the course of a marriage are marital property to be divided equitably between the parties. Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 559 N.E.2d 1292. See also, R.C. § 3105.171(A)(3)(a)(ii); Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 541 N.E.2d 597. Although a party's future *Page 8 
interest in social security benefits are not divisible, it is equitable to consider those benefits in relation to all marital assets.Neville v. Neville, 99 Ohio St.3d 275, 2003-Ohio-3624.
 {¶ 28} The parties stipulated that the marital value of Karen's STRS fund was $120,500. Her IRA was worth $13,763.54, and Daniel's 401(k) was valued at $61,670.38. The only evidence presented as to the marital value of Daniel's social security fund was a calculation by CPA John Bosse, who opined that the marital value was $106,358.62. Significantly, Daniel offered no alternative valuation, merely arguing that Bosse was wrong. Given no alternative, the trial court did not abuse its discretion in accepting Bosse's estimate. Daniel's third assignment of error is overruled.
 IV {¶ 29} For all of the foregoing reasons, we will affirm the final decree and judgment of divorce issued by the trial court.
 FAIN, J. and DONOVAN, J., concur. *Page 1