[Cite as *Steinle v. Steinle*, 2018-Ohio-3985.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

Julie A. Steinle

        Appellee

v.

Garrette P. Steinle

        Appellant

Court of Appeals No.  S-17-042
                    S-17-054

Trial Court No. 11 DR 354

**DECISION AND JUDGMENT**

Decided:  September 28, 2018

* * * * *

Lisa M. Snyder, for appellee.

Joseph F. Albrechta, John A. Coble, and George J. Schrader,
for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This consolidated case is before the court on appeal of the September 7, and

November 30, 2017 judgments of the Sandusky County Court of Common Pleas,

Domestic Relations Division, which awarded appellant, Garrette Steinle, and appellee,

Julie Steinle, a divorce and divided the parties' assets and debts. For the reasons that follow, we affirm, in part, and reverse, in part.

{¶ 2} The parties were married in February 1990, and two children were born issue of the marriage. At the time of the divorce the children were emancipated. During the course of the parties' marriage, appellant has been part-owner and an employee of Steinle GMC Cadillac, his family's automobile dealership; appellant acquired his stock shares prior to the marriage. Appellant is the secretary of the board of directors and a minority shareholder. Steinle GMC has two locations: one in Fremont, Ohio, and one in Clyde, Ohio. Appellant is the manager at the Clyde location.

{¶ 3} Appellant also has an ownership interest in Bro Corp. which was created in 1986, and was owned by three Steinle brothers. One of the brothers was bought out which increased appellant's ownership interest to 50 percent. The company is a holding company with its only asset being a percentage of ownership in Steinle Development, Ltd., another holding company which owns real estate.

{¶ 4} The matter commenced on April 5, 2011, with appellee, Julie Steinle, filing a complaint for divorce. Appellant filed an answer and counterclaim for divorce.

{¶ 5} Relevant to this appeal, on May 31, 2011, temporary orders were issued by the court. Specifically, the court ordered that appellant pay appellee $2,500 monthly for temporary spousal support, that no child support be awarded, and that each party pay their respective living expenses. It further ordered that expenses relating to their children's high school and college tuitions be treated as "marital expenses" and be paid

2.

from the parties' joint assets, and that the parties "seek consent in writing from each other or obtain a court order regarding future college room, board, tuition and book expenses or future high school tuition expenses of the children." Appellant was ordered to provide an "accounting of all such payments." The court ordered that appellant have possession of the marital residence and divided personal property and the vehicles and ordered that appellant maintain the family's health insurance and appellee the family's dental and vision insurance.

{¶ 6} A modified consent judgment entry on temporary orders was filed on January 22, 2016. The entry, which retroactively adopted the agreement made by the parties in June 2013, but never filed with the court, provided that temporary spousal support would be $3,500 monthly, effective August 1, 2013, and that the temporary spousal support paid would be acknowledged as a set-off for determination of the final spousal support award. The entry further provided that college-related expenses not covered by prior orders, including rent, living and other expenses, would be considered a marital expense and reduced from the total marital value in the final division of marital assets.

{¶ 7} In the interim, on July 26, 2013, appellant filed a motion for partial summary judgment requesting that various assets be classified as separate, non-marital property. An additional motion was filed on August 14, 2014. On November 14, 2014, the court denied the motions. Relevant to this appeal, the trial court found that the values of Steinle GMC Cadillac, Inc., Bro Corp., and Steinle Development Limited needed to be

3.

appraised. On February 13, 2015, appellant filed a notice with the court that a business appraiser had been retained; the report was filed with the court on December 9, 2016.

{¶ 8} The final hearing on the matter was held on January 31, and February 1, 2017. Testimony focused on the valuation of the real property and the businesses and the payments for education and medical expenses of the children. Several volumes of exhibits were admitted into evidence

{¶ 9} On August 8, 2017, the court issued its findings of fact and conclusions of law. Relevantly, the court set the marital value of Steinle GMC at $313,273, awarding one-half to each party. The court explained that the growth during the marriage was active due to appellant's employment at the dealership during the entirety of the marriage. The court also found by the same reasoning that the marital value in Bro Corp. was $188,472, with one-half to each. The court denied appellant's request for a $75,000 credit for his payments of the parties' children's education and medical expenses. The court awarded appellee $20,000 in attorney fees noting appellant's delay in getting a business appraisal and "frivolous appeals." The court further made a distributive award to appellee in the sum of $120,000. The divorce judgment entry was journalized on September 7, 2017, and appellant commenced this appeal on October 6, 2017.

{¶ 10} On November 30, 2017, the trial court issued a nunc pro tunc judgment entry finding that a provision in the July 2017 judgment entry conflicted with the August 2017 entry. Specifically, the provision that the temporary spousal support order would terminate only upon the conclusion of the litigation, including all appeals was not

4.

reflected in the later entry; the omission was corrected.  Appellant appealed this judgment entry on December 8, 2017, and on December 28, 2017, the appeals were consolidated.

{¶ 11} Appellant now raises the following assignments of error:

Assignment of Error No. 1:  The trial court erred by denying summary judgment on the business assets of Mr. Steinle when no facts were in dispute.

Assignment of Error No. 2:  The trial court erred in its calculation of the separate and marital portion of Mr. Steinle's business assets at trial.

Assignment of Error No. 3:  The trial court erred in failing to categorize payments made by Mr. Steinle on behalf of the parties' children and the parties' taxes as marital expenses.

Assignment of Error No. 4:  The trial court erred in awarding attorney fees to Mrs. Steinle.

Assignment of Error No. 5:  The trial court abused its discretion through the unlawful imposition of a distributive award.

{¶ 12} In the later, consolidated appeal, appellant raises a "supplemental" assignment of error for our review:

The trial court erred in finding that it had jurisdiction to issue its nunc pro tunc order.

{¶ 13} Appellant's first three assignments of error address the trial court's categorization of the parties' property as separate or marital.  In appellant's first

5.

assignment of error, he contends that the trial court erroneously denied his motion for partial summary judgment as to the classification of his business assets. Appellant asserts that the property at issue was separate and acquired prior to the marriage and that appellee failed to meet her burden demonstrating that the growth in the value of the property was marital and subject to division.

{¶ 14} We note that in reviewing a ruling on a summary judgment motion, this court applies the same standard as the trial court. *McKenzie v. Vickers-McKenzie*, 6th Dist. Lucas No. L-08-1299, 2009-Ohio-5179, ¶ 19, citing *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). Summary judgment will be granted when there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

{¶ 15} Appellant argues that it is uncontested that his interests in Steinle GMC Cadillac, Inc. and Bro Corp. were acquired prior to the parties' marriage; thus, appellee had the burden to demonstrate that the growth in the businesses was active and subject to division.

{¶ 16} As set forth by appellant, R.C. 3105.171(A)(6)(a)(iii) provides that separate property includes "all real and personal property and any interest in real or personal property that is found by the court to be * * * [p]assive income and appreciation acquired from separate property by one spouse during the marriage." Conversely, active growth,

6.

categorized as marital property, includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage."  R.C. 3105.171(A)(3)(a)(iii).

{¶ 17} In general, when dividing marital assets the burden of establishing that an asset is properly categorized as separate property is on the party seeking the determination.  *Kreilick v. Kreilick*, 161 Ohio App.3d 682, 2005-Ohio-3041, 831 N.E.2d 1046 (6th Dist.), ¶ 14.  The parties do not dispute that appellant met his burden in establishing that his stock interests in Steinle GMC and Bro Corp. were acquired prior to their 1990 marriage.  However, appellant claims that the burden then shifted to appellee to demonstrate that any growth in the value of the businesses was active, or marital. Appellant claims that absent such evidence, no issues remained for trial regarding these assets.

{¶ 18} In support of his burden-shifting argument, appellant relies on a Fourth Appellate District divorce case involving the appreciation of farm property purchased by the wife prior to the marriage.  *Harrington v. Harrington*, 4th Dist. Gallia No. 08CA6, 2008-Ohio-6888.  In *Harrington*, the couple lived on the farm property during their marriage and the husband claimed that the value increased by $100,000 during the marriage.  *Id.* at ¶ 3.  Issuing its decision, the court noted that there was no appraisal of the farm's value presented at trial and that the husband failed to demonstrate that the appreciation was due to anything other than passive, market-driven growth.  *Id.* at ¶ 4.

7.

{¶ 19} On appeal, the husband argued that the trial court erred by not categorizing the appreciation of the wife's farm as marital property, valuing the property, and dividing it accordingly. *Id.* at ¶ 10. Reversing the trial court, the court held that after a spouse established that an item was separate property, "the spouse seeking to have any *appreciation* of that separate property classified as marital property must demonstrate that either spouse's labor, monetary, or in-kind contribution in fact *caused* an increase in the value of that separate property." (Emphasis in original.) *Id.* at ¶ 13. So finding, the court cited several cases which it believed "implicitly" placed the burden on the party seeking to divest the appreciation from the other party's separate property. *Id.*

{¶ 20} Upon review, we find the cases cited in *Harrington* do not provide any direct support for the court's holding. For example, in *Middendorf v. Middendorf,* 82 Ohio St.3d 397, 696 N.E.2d 575 (1998), the Supreme Court of Ohio clarified that marital property includes the increase in value of separate property due to either spouse's efforts. *Id.* at syllabus. The court then turned to a discussion of the credibility of the evidence presented to show whether the increase in value of the business, a stockyard co-owned by husband and his brother, was due to the labor, monetary, or in-kind contribution of the husband. *Id.* at 401. The husband argued that the increase in value was due to "passive appreciation from 'market changes.'" *Id.* at 402. Rejecting this assertion, the court explained:

> Passive forces such as market conditions may influence the profitability of a business. However, it is the employees and their labor

8.

input that make a company productive. In today's business environment, executives and managers figure heavily in the success or failure of a company, and in the attendant risks (e.g., termination, demotion) and rewards (e.g., bonuses, stock options) that go with the respective position. These individuals are the persons responsible for making pivotal decisions that result in the success or failure of the company. There is no reason that these factors should not likewise be relevant in determining a spouse's input into the success of a business. *Id.*

{¶ 21} Accord *Entingh v. Entingh*, 2d Dist. Montgomery No. 22117, 2008-Ohio-756 (husband was 12.3 percent stockholder and was employed holding high-level positions in the family business).

{¶ 22} Notably, *Harrington* also cites *Holman v. Holman*, 6th Dist. Ottawa No. OT-96-029, 1997 Ohio App. LEXIS 3516 (Aug. 8, 1997). In *Holman*, this court found that appreciation in the value of real property which initially comprised of a vacant lot "indicate[d] that the joint labor of the parties contributed to the appreciation in the value of the property." *Id.* at *8. We then stressed that the burden is on the party seeking to establish that an asset is his or her own separate property. *Id. See Kreilick*, 161 Ohio App.3d 682, 2005-Ohio-3041, 831 N.E.2d 1046 (6th Dist.).

{¶ 23} Because we conclude that the burden did not shift to appellee to demonstrate that the appreciation in the property was active and that genuine issues regarding growth and valuation remained, the trial court did not err when it denied

9.

appellant's motion for partial summary judgment. Appellant's first assignment of error is not well-taken.

**{¶ 24}** In his second assignment of error, appellant similarly argues that the court's determination that the growth in the business assets, specifically Steinle GMC and Bro Corp., were marital property was against the weight of the evidence. Appellant argues that "substantial" evidence was presented demonstrating that he did not contribute in any form leading to an increase in the businesses' value.

**{¶ 25}** As set forth above, "[t]he party seeking to have property declared separate has the burden of proof by a preponderance of the evidence." *Dunham v. Dunham*, 171 Ohio App.3d 147, 2007-Ohio-1167, 870 N.E.2d 168, ¶ 20 (10th Dist.). "On appeal, a trial court's classification of property as marital or separate is reviewed under a manifest weight standard." *Miller v. Miller*, 6th Dist. Sandusky No. S-12-035, 2013-Ohio-5071, ¶ 22. The standard of review for manifest weight is the same in a civil case as in a criminal case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. Accordingly, we weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* at ¶ 20. In so doing, "the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

10.

{¶ 26} We will separately address the evidence presented as to the nature of appellant's involvement and contributions to Steinle GMC and Bro Corp. The business valuation expert, Grover Rutter, testified that Steinle GMC has 500 shares and that appellant acquired 120 shares in 1988, with a 24 percent stake in the company. Rutter valued the premarital value in appellant's shares at $313,122. Rutter then adjusted the 1989 value for inflation (using the Midwest Urban Consumer Price Index) at $531.874.52. Rutter stated that the adjustment was important in order to determine real growth versus inflationary growth. Rutter stated that the value as of December 31, 2010 was $616,546, placing the increase in value of the shares during the marriage at $84,571.72. Rutter stated that this increase in value was marital property and subject to division. Rutter testified that appellant did not make any capital or in-kind contributions. As to labor, Rutter stated that his opinion was that because appellant received a paycheck, his labor did not contribute to the increased value of the business. Rutter acknowledged that "some courts" have concluded otherwise.

{¶ 27} Appellant testified that he acquired 120 shares of Steinle GMC prior to his marriage and was currently a 30 percent shareholder. Appellant stated that he accepted the valuation testimony of Steinle GMC given by Rutter. Appellant testified that a shareholder wanting to leave the company would first have to offer the shares to the other members. Appellant stated that the company was not in the position to purchase shares and questioned the desirability of a minority shareholder interest in the open market.

11.

**{¶ 28}** Appellant's brother and business partner, Steve Steinle, testified that decisions regarding Steinle GMC are made by the shareholders, not individual employees. Steve further stated that the company consists of multiple departments including new and used vehicles, parts, and a collision center. The company has two offices with approximately 50 employees. Steve stated that expenses and income are analyzed by department not by individual employees. Steve testified that the profitability of the company turns on factors such as the overall economy, product line and availability, and sales team performance.

**{¶ 29}** As to Bro Corp., Rutter testified that it was incorporated in December 1986, and that 750 shares were authorized. One hundred shares were given to each brother; the remaining 450 were not issued.

**{¶ 30}** Rutter valued the company at $188,472, and found the entire value to be premarital property. So finding, Rutter explained:

> [T]he shares of stock were acquired pre-marriage. There did not appear to be any additional contributions made either monetary or physical assets to the company by Gary, and I was not aware of any personal effect that he had on the company. I talked with Stephan, and Stephan said that they pretty much let this go on auto pilot, that there's things that they just don't need to do, so there's no day-to-day activity with the company, so based upon the testimony of the people, based upon the conversations with Gary and Stephen, based upon the records of the Articles of Incorporation

12.

and tax return, I determined and my opinion is, that this is non-marital property.

{¶ 31} Steve Steinle testified that Bro Corp. was created in 1986 and originally owned by Steve, appellant, and their brother Phil who they ultimately bought out on a debt/asset swap. Steve testified that since 1986, no additional capital or labor was put into the company and that the only asset of the company is its share in Steinle Development.

{¶ 32} Based on the foregoing, we find that the manifest weight of the evidence supports the court's findings as to the classification and amount of the appreciation of appellant's interest in GMC Steinle as marital property. Although the valuation expert found that appellant's labor did not contribute to the increased value of the company, he acknowledged that courts have made such a finding. Appellant had a pivotal role in the operation of the company during the parties' marriage.

{¶ 33} We further find, however, that the appreciation in the Bro Corp. interest was passive, separate property and the court erred in classifying it as marital. There was no evidence that appellant contributed any capital or labor to the company which would have impacted its value. Accordingly, appellant's second assignment of error is well-taken, in part.

{¶ 34} Appellant's third assignment of error asserts that the trial court erred by failing to classify payments made by appellant on behalf of the parties' children as marital expenses. Specifically, appellant argues that payments made for education

13.

expenses and tax liabilities should have been classified as marital expenses pursuant to two prior consent judgment entries. Appellant points to three clauses in the two entries: First, in the May 2011 order that each party be responsible for their respective living expenses which for appellee included "household expenses, rent or mortgage, insurance, taxes, utilities, services, food, and clothing." As to appellant it included "the mortgage on the marital home, insurance, taxes, utilities, services, food, and clothing."

{¶ 35} The May 2011 order further provided that the school tuitions of the parties' two children be "treated as marital expenses and paid from the parties joint assets." And that:

> The parties shall seek consent in writing from each other or obtain a court order regarding future college room, board, tuition and book expenses or future high school tuition expenses of the children. Defendant shall provide to Plaintiff an accounting of all such payments.

{¶ 36} The January 2016 order, which as previously stated was retroactive to 2013, stated:

> The college-related expenses of the parties' emancipated children * * * not covered by prior orders, including rent, living and other expenses and paid by either of the parties shall be considered a marital expense and shall be reduced from the total marital value in the final division of marital assets.

14.

{¶ 37} At trial, appellant presented testimony and billing statements and receipts purportedly demonstrating that he expended a total of $66,321.82 on the education of the parties' two children and requesting a credit for the sums paid. As stated by appellee, much of the evidence presented was not in the form of actual receipts. Further, some of the education expenses evidence that the sums were paid from a marital account which was in appellant's control and was depleted prior to trial. Based on the foregoing, we cannot say that the court erred in denying appellant's request for a set-off.

{¶ 38} As to the parties' tax obligations, appellant contends that despite the 2011temporary order which directed that each party pay taxes, he paid for the preparation of and paid the taxes during the marriage. Appellant claimed that appellee failed to withhold sufficient tax from her income and that he paid the difference. We note that the 2011 order stated that "[t]he parties agree to file a joint tax return for 2011, if they are still married on 31, December 2011, and same shall be prepared, filed and taxes paid as the parties' custom and practice." The 2016 orders are silent on the issue.

{¶ 39} Reviewing the record and the evidence presented at trial, we cannot say that the court's failure to award a set-off for the tax obligations was error. Appellant's third assignment of error is not well-taken.

{¶ 40} In his fourth assignment of error, appellant contends that the trial court abused its discretion by awarding attorney fees to appellee without making the statutory findings required under R.C. 3105.73. The relevant section provides:

15.

In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate. R.C. 3105.73(A).

{¶ 41} An award of attorney fees must be fair, equitable, and serve the ends of justice. *Garritano v. Pacella*, 6th Dist. Lucas No. L-07-1171, 2009-Ohio-2928, ¶ 101, citing *Bowen v. Bowen*, 132 Ohio App.3d 616, 642, 725 N.E.2d 1165 (9th Dist.1999). A trial court's award of attorney fees will be reversed only if the court abused its discretion. *Id.*

{¶ 42} Appellant contends that the attorney fee award was not warranted because it was based on the court's mistaken placement of blame upon appellant for taking five years to get a business appraisal and his alleged "frivolous appeals." Appellee counters that in making the award, the trial court was aware that appellant's act of prolonging the litigation added to her financial strain and that the parties have always had a "huge" disparity in their incomes.

{¶ 43} In making the attorney fee award, the trial court stated:

The Court has applied 3105.73(A) in its consideration of awarding attorney fees to the wife, specifically "the conduct of the parties and other

relevant factors." This divorce did not involve any genuine issue regarding children. While an appraisal of the businesses was necessary, to take 5 years to get an appraisal, after frivolous appeals were prosecuted strikes this writer as unduly drawing out the proceeding. And, for the husband's counsel to argue that an award of attorney fees to wife is not justified under the statute, it is disingenuous. The wife's attorney fees-prior to preparation of written argument, etc. were in the neighborhood of $34,000.00. The husband's attorney fees exceeded $228,000 by that time. If husband can justify his attorney fee, how can he object to contributing toward wife's fees, of which the amount the Court is ordering is less than 10% of what he has paid his own attorney.

{¶ 44} Upon review of the parties' arguments and the relevant case law, we cannot say that the trial court's $20,000 attorney fee award was an abuse of its discretion. Appellant's fourth assignment of error is not well-taken.

{¶ 45} Appellant's fifth assignment of error objects to the distributive award of $120,000, to be paid in addition to the $440,000 ordered to be paid to equalize the parties' assets and debts. Appellant argues that in making the award the court failed to consider the statutory requirements under R.C. 3105.171. Appellee counters that the award was proper based upon appellant's financial misconduct which included the depletion of the marital assets over which he had exclusive control during the pendency

17.

of the divorce. Appellee further asserts that the court has the authority to issues any orders it deems equitable under R.C. 3105.171(J).

{¶ 46} R.C. 3105.171(E)(1) provides that "the court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. The court may require any distributive award to be secured by a lien on the payor's specific marital property or separate property."

{¶ 47} In determining whether to make a distributive award the court the court is required to consider:

> (1) The duration of the marriage;
>
> (2) The assets and liabilities of the spouses;
>
> (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
>
> (4) The liquidity of the property to be distributed;
>
> (5) The economic desirability of retaining intact an asset or an interest in an asset;
>
> (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
>
> (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

18.

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.  R.C. 3105.171(F).

{¶ 48} A trial court's ruling on a distributive award is reviewed for an abuse of discretion.  *See Krohn v. Krohn*, 6th Dist. Wood No.WD-16-010, 2016-Ohio-8379, ¶ 20-22.

{¶ 49} In making the distributive award, the trial court specifically noted that the award was made pursuant to R.C. 3105.171(F) and necessary to reach an "equitable result" in the division of property.  The court noted that the proceedings were unduly prolonged causing appellee to rent instead of own housing and that the assets the wife would be receiving were not income producing.  Further, that appellee would need to purchase health insurance and a vehicle.

{¶ 50} Upon review of the relevant statutory and case law, the record in this case,[1] and the fact that the court stated that it reviewed the relevant factors in making the

---

[1] We do acknowledge that during the trial on the matter while testifying regarding multiple marital bank accounts that had been depleted during the course of the divorce proceedings, appellant acknowledged that there would be a distributive award.

19.

distributive award, we cannot find that the award was an abuse of the court's discretion. Appellant's fifth assignment of error is not well-taken.

{¶ 51} Appellant's final assignment of error contends that the trial court did not have the authority to issue the November 30, 2017 nunc pro tunc judgment entry adding the language that temporary spousal support would continue until the conclusion of all appeals. Appellant asserts that once the initial appeal in this matter was filed, the court was divested of jurisdiction. Conversely, appellee asserts that the entry does not make a substantive change to the order and merely corrects an omission from the August 31, 2017 judgment entry of divorce.

{¶ 52} Civ.R. 60(A) provides:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

{¶ 53} We note that we will not reverse a trial court's decision to grant relief from judgment pursuant to Civ.R. 60(A) absent an abuse of discretion. *Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994). In the present case, following appellant's October notice of appeal, on November 14, 2017, appellee filed a motion for

20.

reinstatement of temporary spousal support pending appeal. Appellant opposed the motion, stressing that the court clearly did not retain jurisdiction to modify the support order.

{¶ 54} The trial court's September 7, 2017 judgment entry of divorce stated: "There shall be no spousal support obligation on the part of either party to the other and spousal support is forever barred effective the date of journalization of this Judgment Entry of Divorce."

{¶ 55} It is undisputed that leave of court was not obtained prior to the trial court's nunc pro tunc entry. Therefore, the court did not have authority to issue the November 30, 2017 nunc pro tunc entry and it is void. Accord *In re M.O.*, 9th Dist. Summit Nos. 28351, 28371, 28383, 2017-Ohio-7691, ¶ 24; *Mulliken v. Mulliken*, 11th Dist. Geauga No. 2007-G-2806, 2008-Ohio-2752, ¶ 22; *Outback/Buckeye II Ltd. Partnership v. Grandchildren's Trust*, 2d Dist. Greene Nos. 06-CA-2, 06-CA-44, 2007-Ohio-577, ¶ 73-76. The assignment of error is well-taken.

{¶ 56} On consideration whereof, we find that substantial justice was not done the party complaining and the judgment of the Sandusky County Court of Common Pleas is affirmed, in part, and reversed, in part. Specifically, the trial court's order that appellant is to pay $440,000 to equalize the distribution of marital assets is reduced by $94,236, or half of appellant's interest in Bro Corp. The award will be further reduced by the sums appellant paid in spousal support during the pendency of the appeal. The matter is

21.

remanded for a determination of the amount of spousal support paid during appeal and a final calculation of the settlement.  Pursuant to App.R. 24, the parties shall equally pay the costs of appeal.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.        _____
                 JUDGE

Arlene Singer, J.

             _____
Thomas J. Osowik, J.           JUDGE
CONCUR.

             _____
                 JUDGE

22.